## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

KASON INDUSTRIES, INC.   )
          )
  Plaintiff,     )
          )  Civil Action No.
v.          )  __3:17-cv-26-TCB__
          )
KKT, INC. d/b/a LOCKWOOD  )
MANUFACTURING COMPANY, )
          )
  Defendant.    )
          )

## VERIFIED COMPLAINT

Plaintiff, Kason Industries, Inc. ("Kason"), by and through its undersigned counsel, brings this action for trademark infringement, counterfeiting, and related causes of action, against Defendant, KKT, Inc. d/b/a Lockwood Manufacturing Company ("KKT"), and alleges as follows:

## PARTIES

1. Kason is a Georgia corporation, with its principal place of business at 57 Amlajack Boulevard, Newnan, Georgia 30265.

2. Upon information and belief, KKT is a corporation organized under the laws of the State of Michigan, with its principal place of business located at 31251 Industrial Road, Livonia, Michigan 48150.  KKT does business under the

name Lockwood Manufacturing Company.  Defendant can be served through its

registered agent David Lamson at 31251 Industrial Road, Livonia, MI 48150.

## JURISDICTION AND VENUE

3.     This is an action for, *inter alia*, trademark infringement and

counterfeiting, trademark dilution, false designation of origin, unfair competition,

unjust enrichment, and related claims pursuant to 15 U.S.C. §§ 1, *et seq.*, including

§§ 1114, 1125(a), 1125(c),  and for related claims of unfair competition under the

laws of the State of Georgia.

4.     This Court has subject matter jurisdiction over this action pursuant to

15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331, 1332, and § 1338(a) and (b).

This Court has supplemental jurisdiction over Plaintiff's additional claims,

pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's

federal trademark infringement and counterfeiting claims, over which this Court

has original jurisdiction, that the additional claims form part of the same case or

controversy under Article III of the United States Constitution.

5.     This Court has personal jurisdiction over KKT because KKT conducts

business in this district, at the very least by engaging sales representatives –

namely Sunlow, Inc. d/b/a Master Marketing and located at 1400 English Street

NW, Atlanta, GA 30318 – to market and sell products into this district.  On its

website, KKT advertises Master Marketing as the KKT "Sales Rep" in Georgia. (Exhibit A).

6.     This Court also has personal jurisdiction over KKT because KKT sells products into this district by way of ACityDiscount Restaurant Equipment & Supply, located at 6286 Dawson Blvd Norcross, GA 30093.  ACityDiscount offers Lockwood products on its website and states that at least one Lockwood product is "shipped directly from the manufacturer [Lockwood] with warranty."  (Exhibit B).

7.     This Court also has personal jurisdiction over KKT because, on information and belief, KKT has sold the infringing products at issue in this Action into this district.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), because a substantial part of the events and injury giving rise to Kason's claims have occurred and continue to occur in this district.

## **RELEVANT BACKGROUND ON PLAINTIFF KASON**

9.     Since the 1920's, Kason has been and continues to be engaged in the business of developing refrigeration and restaurant equipment hardware in the United States.

10.     Over the years, Kason has created hundreds of innovative, reliable products and has grown in size, sophistication, and reputation to become a leading

manufacturer of commercial refrigeration and restaurant equipment hardware in the United States.

11.     In 1963, the United States Patent and Trademark Office awarded Kason Trademark Registration Nos. 744,632 (the "'632 Mark") and 744,763 (the "'763 Mark") for the word "KASON", noting Kason's long use of the KASON mark in connection with refrigeration and restaurant equipment hardware as far back as "about 1928."  True and correct copies of the '632 Mark and '763 Mark are attached hereto as Exhibits C and D.

12.     Today, Kason is headquartered in Newnan, Georgia, where its facilities include nearly 250,000 square feet of manufacturing plants and offices.

13.     In 1992, the United States Patent and Trademark Office awarded Kason Trademark Registration No. 1,717,452 (the "'452 Mark") for the following stylized Kason name, sometimes known as the "Kason Parallelogram" Mark:



14.     In 1997, Kason began selling a latch for use in commercial refrigeration and restaurant equipment, which is designated with the Kason part

number "544" (hereinafter the "Kason Latch").  A photograph of the Kason Latch, as currently offered by Kason is shown below:



(Exhibits E and F).

15.    The United States Patent & Trademark Office has recognized the distinctive appearance of the Kason Latch as a trademark belonging exclusively to Kason.  As such, Kason owns U.S. Trademark Registration No. 4,906,919 (the "'919 Mark"), covering the appearance of the Kason Latch:



Image from U.S. Trademark Registration No. 4,906,919

16.    True and correct copies of Kason's '452 and '919 Marks (hereinafter the "Kason Marks") are attached hereto as Exhibits G and H.

17.    The United States Patent & Trademark Office has also recognized the ornamental design of the Kason Latch, and awarded Kason U.S. Design Patent No. D391,141 (the "Kason Patent"), as shown below:



Image from U.S. Design Patent No. D391,141

6

18.    By virtue of the issuance of the Kason Patent, as of the critical date, the design claimed by the Kason Patent (the same design as embodied in the '919 Mark) was deemed unique, and non-functional.  A true and correct copy of the Kason Patent is attached hereto as Exhibit I.

## KKT AND KASON

19.    KKT is a seller of, *inter alia*, food service equipment, such as storage and display cabinets.  According to its website, KKT also is a "manufacturing company."

20.    From about May 2010 and until about June 10, 2014, KKT purchased from Kason the Kason Latches for use with and mounting to KKT's food service equipment.

## KKT'S WRONGFUL CONDUCT

21.     During the February 9-11, 2017 National Association of Food

Equipment Manufacturers show ("NAFEM") in Orlando, Florida, KKT displayed a

number of cabinets and other equipment in KKT's display booth, as shown below:




(See Exhibits J, K, L, M, N, O).  Latches that appeared to be Kason Latches were

mounted to these KKT cabinets.  These non-Kason Latches incorporated into the

KKT cabinets were virtually identical in appearance to the Kason Latches, and

were mounted in the same manner and location to the KKT cabinets as the Kason

Latches, but were, in fact, unauthorized copies of Kason's Latch.

22.     Kason thereafter purchased the KKT latches from Heritage Parts, a

parts reseller.  The KKT latches from Heritage Parts are advertised as having

"Manufacturer Part #: HAN-CA".

23.     KKT also sells the non-Kason Latches via third party websites, such

as www.ACityDiscount.com, as depicted below:





(Excerpt from Exhibit B) (red circles added).

24.    The non-Kason Latch sold by KKT, which KKT identifies as "Han-Ca," is virtually identical in appearance to the Kason Latch:





(Exhibit P).

25.    But, KKT's latch does not include the Kason Parallelogram Mark or the part number on the bottom of the metal latch body:



Kason Latch

Han-Ca

(Exhibit Q)(annotations added).

26.    Upon closer inspection, Kason discovered unique markings inside the molded plastic handle.  These markings indicate that KKT's non-Kason Latch is manufactured using the same equipment that is used to manufacture Kason Latches.  Also, KKT's product is stamped with Kason's '452 Mark and Kason's part number:



Han-Ca

(Exhibit R).

27.    KKT's non-Kason Latches are virtually identical to the Kason '919

Mark and also include the Kason '452 Mark:

| Kason Marks | KKT Infringing Product |
|---|---|
|  (Reg. No. 4,906,919) | |
| (Reg. No. 1,717,452) | |

28.    KKT has been making, using, offering for sale, selling, and/or

importing into the United States, the non-Kason Latch.

29.    KKT continues to make, use, offer for sale, sell, and/or import into the

United States, the non-Kason Latch.

30.    Kason and KKT are both direct and indirect competitors in the

commercial restaurant equipment industry, for at least sales of latches.

31.    On information and belief, KKT acquires and sells its non-Kason

Latches at a price believed to be lower than Kason's resale price.

32.     Kason and KKT market and try to influence the same group of customers to purchase their wares, but KKT does so with a deficient (*e.g.*, non-NSF certified) product at lower prices, causing harm to Kason, including price erosion, loss of sales, loss of goodwill, damage to the emerging market for the trademarked goods, damage to reputation, and lost business opportunities.

33.     Each sale by KKT of the non-Kason Latch is a lost sale for Kason, causing a loss in market share, revenue, and the business opportunities reflected by such.

34.     Kason's goodwill is also at risk if KKT does not immediately stop infringing the Kason Marks.  By copying the Kason Latch and offering it as a competitive product, KKT is trading off of Kason's reputation and goodwill as a leading innovator in the field of restaurant equipment components symbolized by Kason's Marks.  As a result, KKT gains a competitive advantage in influencing purchasers of its cabinets and equipment bearing the non-Kason Latches and also unfairly gains a potential foothold in the market with customers, which irreparably harms Kason as the single source of origin for the trademarked Kason Latch. Furthermore, KKT's actions irreparably harm Kason's opportunity to strengthen its relationships with customers as the sole supplier of the trademarked Kason Latch.

35.    KKT's infringement further harms Kason, because KKT will unfairly gain an entry into the market of selling latches, including selling related replacement parts in the future, as well as the aftermarket for repairs.

36.    Customers purchase and incorporate latches into the products they manufacture including commercial heated and refrigerated cabinets.  After time, the customers will often need replacement parts and aftermarket repairs.  As would be expected, those customers turn to Kason.

37.    Once a customer has made investments of time, energy and resources into choosing certain hardware and parts from one manufacturer, and has confirmed that the finished product meets all applicable codes and desires, it is reluctant to change manufacturers and/or products and, as a consequence, it becomes very difficult for another manufacturer to sell competing hardware to the customer.  Additionally, once a piece of hardware is installed and in use, the hardware manufacturer gains the intangible benefit of beginning to build a stronger relationship with the end users who become familiar with the hardware through actual day-to-day use.  For these reasons, Kason commonly invests a substantial amount of time, energy and resources into developing, patenting, certifying, registering, marketing and selling new products, such the Kason Latch, to customers with the reasonable expectation that there will be a substantial return on

its investments as the new products emerge in the marketplace, and as replacement parts and repairs are needed.  As a result, once KKT misuses the appearance of the non-Kason Latch to convince a customer to order latches from KKT, Kason is immediately and irreparably harmed.

38.     On information and belief, KKT's non-Kason Latches are not NSF certified, and are deficient in at least that respect.  NSF certification requires compliance with strict standards and procedures, undergoing extensive product testing and material analysis.  The Kason Latches are NSF certified.  (*See* http://info.nsf.org/Certified/Food/Listings.asp?Company=25800&Standard=002; Exhibit F).

39.     Kason invested substantially in developing, patenting, trademarking, creating, achieving NSF certification, improving, and marketing its Kason Latch. By doing so, Kason created a demand for the Kason Latch among customers and others in this market.  Kason reasonably expected the trajectory of its development, marketing, and sales efforts and investments to result in sales to many different customers and at prices commensurate with its market position for these products, and with gaining positive goodwill and reputation for its products and features, and with additional business opportunities flowing therefrom due to Kason having an early foothold in the emerging market for its branded and patented products.

40.    Instead of Kason and its Kason Latch continuing this trajectory and achieving these results, KKT's infringing actions have caused others to purchase non-Kason Latches from KKT instead of Kason, and have caused and will continue to cause Kason to suffer irreparable harm including lost sales, price erosion, loss of goodwill, damage to reputation and lost business opportunities.

41.    Additionally, KKT, by infringing the Kason Marks and continuing to infringe the Kason Marks, has unfairly gained a foothold in the market Kason has created.  KKT has displaced Kason from the full foothold Kason should have had among customers in the market by reason of Kason's development, patenting, trademarking, marketing, and sales efforts.

42.    As a result of KKT's actions, Kason has or will suffer price erosion, loss of goodwill, damage to reputation, future damages from lost sales of replacement parts and equipment repair, and loss of other business opportunities. As a result, Kason will be irreparably harmed by KKT's actions.

## COUNT I
### (Trademark Infringement and Counterfeiting – 15 U.S.C. § 1114)

43.    Kason restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

44.    The Kason Marks and the goodwill of the business associated with them in the United States and throughout the world are of great and incalculable

value, are highly distinctive, and have become universally associated in the public mind with Kason's products and related services of the very highest quality and reputation finding their source from the Kason.

45.    KKT has manufactured, distributed, offered for sale, and/or marketed products to the consuming public using a counterfeit mark and/or in direct competition with Kason's provision of goods under the Kason Marks, in or affecting interstate commerce.  KKT acted without Kason's authorization or consent, and with knowledge of Kason's well-known and prior rights in the registered Kason Marks.  Despite that knowledge, KKT's latches are intentionally confusingly similar to and/or substantially indistinguishable from, the Kason Marks and, in some cases, bear Kason's name and product number.

46.    KKT's use of copies or confusingly similar versions of the Kason Marks in conjunction with advertising KKT's goods is likely to cause, and is causing, confusion, mistake, and deception among the general purchasing public as to the origin of KKT's goods, and is likely to deceive the public into believing the goods being promoted and sold by KKT bearing the Kason Marks originate from, are associated with, or are otherwise authorized by Kason, all to the damage and detriment of Kason's reputation, goodwill, and sales.

47.    KKT's use of the Kason Marks also is likely to cause, and is causing, confusion, mistake, and deception among the restaurant equipment selling community and purchasing public, many of whom are small business owners, as to the origin of related goods bearing the Kason Marks, and is likely to deceive that public into believing that KKT's products are related goods that originate from, are associated with, or are otherwise authorized by the Kason, all to the damage and detriment of Kason's reputation, goodwill and sales.

48.    Kason has been and will continue to be harmed by KKT's wrongful conduct.

49.    KKT's aforesaid acts have irreparably harmed Kason and will continue to irreparably harm Kason unless enjoined by the Court, as a result of which Kason is without adequate remedy at law.

50.    As the direct and proximate result of KKT's deliberate and intentional infringement, KKT has been unjustly enriched while Kason continues to suffer injury in an amount not yet ascertained, including future damages from loss of replacement parts and equipment repair.

51.    Kason is entitled to treble damages, attorneys' fees, and/or statutory damages for KKT's use of counterfeit marks pursuant to 15 U.S.C. §§ 1117(b) and 1117(c).

52.    Kason also is entitled to injunctive relief, as detailed in 15 U.S.C. § 1116, including seizure of goods bearing counterfeit marks under § 116(d).

## COUNT II
### (Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a))

53.    Kason restates and incorporates the averments set forth in the above paragraphs as though fully set forth herein.

54.    The goods bearing the Kason Marks sold and offered for sale by KKT are of the same nature and type as the goods and services sold and offered for sale by Kason and, as such, KKT's use is likely to cause confusion to the general purchasing public, and to the restaurant franchise purchasing public.

55.    By misappropriating and using the Kason Marks, KKT misrepresents and falsely describes to the general public and to the purchasing community the origin and source of the goods bearing the Kason Marks and creates a likelihood of confusion by consumers and by the purchasers of products as to the source of such goods and services.

56.    KKT's actions in using the Kason Marks constitute a false designation of origin, sponsorship, approval, or certification, and a false description or representation of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

57.    Because of Kason's open and widespread use of the Kason Marks in the promotion of Kason's business which competes with KKT's business, and in light of (1) the appearance of the Parallelogram Mark on KKT's non-Kason Latches and (2) KKT's past business relationship with Kason, KKT's use of the Kason Marks is with knowledge and in willful disregard of Kason's rights therein.

58.    Kason has been and will continue to be harmed by KKT's wrongful conduct.

59.    KKT's aforesaid acts have irreparably harmed Kason and will continue to irreparably harm Kason unless enjoined by the Court, as a result of which Plaintiff is without adequate remedy at law.

60.    As the direct and proximate result of KKT's deliberate and intentional infringement, KKT has been unjustly enriched while Kason continues to suffer injury in an amount not yet ascertained.

## COUNT III
### (Federal Trademark Dilution – 15 U.S.C. § 1125(c))

61.    Kason restates and incorporates the averments set forth in the above paragraphs as though fully set forth herein.

62.    The Kason Marks are inherently distinctive and, as a result of Kason's longstanding and substantial use, and significant advertising expenditures and sales

success, the Kason Marks have developed significant goodwill and have become famous.

63.    KKT's improper and unlicensed use of the Kason Marks in interstate commerce began after the Kason Marks became distinctive and famous among the consuming public.

64.    KKT's marketing and display of its products utilizing the Kason Marks have diluted, continue to dilute, and/or are likely to cause dilution by blurring the distinctive quality of the famous Kason Marks, in violation of 15 U.S.C. § 1125(c).

65.    Because of Kason's open and widespread use of the Kason Marks in the promotion of the restaurant equipment parts business, which competes with KKT's business, and in light of the enclosed name "Kason" appearing on KKT's non-Kason Latches, and KKT's past business relationship with Kason, KKT willfully intended to trade on Plaintiff's goodwill, and to cause dilution of the Kason Marks.

66.    Plaintiff has been and will continue to be harmed by KKT's wrongful conduct.

67.    KKT's aforesaid acts have irreparably harmed Kason and will continue to irreparably harm Kason unless enjoined by the Court, as a result of which Kason is without adequate remedy at law.

68.    As the direct and proximate result of KKT's deliberate and intentional infringement, Plaintiff continues to suffer injury in an amount not yet ascertained

**COUNT IV**
**(Common Law Trademark Infringement)**

69.    Kason restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

70.    As a result of Kason's hard work and investments in producing, providing, and promoting its products associated with the Kason Marks, all of which occurred long before KKT began marketing and selling its latches that infringe the Kason Marks, Kason has built up valuable good will in the Kason Marks.  As such, the Kason Marks have become associated with Kason's products and services, and have come to symbolize the reputation for quality and excellence of the Kason products and services.

71.    KKT's unauthorized use of the Kason Marks is being made with KKT's knowledge of Kason's well-known and prior rights in the Kason Marks.

72.    KKT's unauthorized use of the Kason Marks is likely to cause confusion or to deceive the consuming public and the purchasers of restaurant

equipment, and constitutes trademark infringement under the common law of the State of Georgia, and the laws of the United States.

73.    KKT's acts constitute willful infringement of Kason's exclusive rights in the Kason Marks, in violation of state common law.

74.    Plaintiff has been and will continue to be harmed by KKT's wrongful conduct.

75.    KKT's aforesaid acts have irreparably harmed Kason and will continue to irreparably harm Kason unless enjoined by the Court, as a result of which Kason is without adequate remedy at law.

76.    As the direct and proximate result of KKT's deliberate and intentional infringement, Kason continues to suffer injury in an amount not yet ascertained.

## COUNT V
**(Georgia Unfair Competition – O.C.G.A. § 10-1-372)**

77.    Kason restates and incorporates the averments set forth in the above paragraphs as though fully set forth herein.

78.    As a result of Kason's hard work and investments in producing, providing, and promoting its products associated with the Kason Marks, Plaintiff's has built up valuable goodwill in the Kason Marks.  As such, the Kason Marks have become associated with the Plaintiff's products and services, and have come

to symbolize the reputation for quality and excellence of the Kason products and services.

79.     KKT, with full knowledge of the Kason Marks and of Kason's prior use of same, intended to and did trade on the goodwill associated with the Kason Marks.

80.     KKT's acts have misled and continue to mislead and deceive the public as to the source of the goods and services offered by KKT, permit and accomplish passing off of the goods offered by KKT as those of Kason's products, and falsely suggest a connection with Kason.

81.     Therefore, KKT has committed unfair competition in violation of Georgia law O.C.G.A. § 10-1-372.

82.     Plaintiff has been and will continue to be harmed by KKT's wrongful conduct.

83.     KKT's aforesaid acts have irreparably harmed Kason and will continue to irreparably harm Kason unless enjoined by the Court, as a result of which Kason is without adequate remedy at law.

84.     As the direct and proximate result of KKT's deliberate and intentional infringement, KKT has been unjustly enriched while Plaintiffs continue to suffer injury in an amount not yet ascertained.

## COUNT VI
### (Common Law Unjust Enrichment)

85.    Kason restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

86.    As a result of Kason's hard work and investments in producing, providing, and promoting its products and services associated with the Kason Marks, Plaintiff has built up valuable good will in the Kason Marks.  As such, the Kason Marks have become associated with the Plaintiff's products and services, and have come to symbolize the reputation for quality and excellence of Plaintiff's products and services.

87.    KKT's use of its confusingly similar Infringing Marks after Plaintiff's significant investment in the Kason Marks has resulted, and will continue to result, in KKT's being unjustly enriched through their unauthorized use of the Kason Marks, or other such confusingly similar marks.

88.    Plaintiff has been and will continue to be harmed by KKT's wrongful conduct.

89.    As a result of KKT's foregoing unlawful actions, KKT has avoided considerable expense that it otherwise would have incurred to introduce a new trademark or service mark to the public.  Defendants also have retained revenues obtained by its use of the confusingly similar Kason Marks to which they were not

equitably or legally entitled.  KKT was unjustly enriched at the expense of Plaintiff, and in violation of the common law of the State of Georgia.

90.    KKT's aforesaid acts have irreparably harmed Kason and will continue to irreparably harm Kason unless enjoined by the Court, as a result of which Kason is without adequate remedy at law.

91.    As the direct and proximate result of KKT's deliberate and intentional infringement, Plaintiff continues to suffer injury in an amount not yet ascertained, including future damages from loss of replacement parts and equipment repair.

## **JURY DEMAND**

92.    Plaintiffs demand a trial by jury on all disputed issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a judgment in its favor and demands the following relief:

1.  Preliminary and permanent injunctions enjoining KKT, its successors or assigns, and its officers, directors, partners, agents, subcontractors, servants, employees, attorneys, affiliates, licensees, subsidiaries and related entities, and all others acting in concert or participation with KKT, from doing any of the following:

a. Displaying, marketing, or using any unauthorized copy of the Kason Marks, or any such similar mark, to advertise, promote the sale of, or to identify any product or service offered by Defendant;

b. Making, in any manner whatsoever, any statement or representation, or performing any act likely to lead members of the public to believe that Defendant, or the products or services offered by Defendant, are in any manner, directly or indirectly, associated, affiliated, connected with, or approved by Plaintiff;

2. A decree ordering an accounting by Defendant to establish all profits realized as a result of the wrongful acts by Defendant set forth in this Complaint, and any other wrongful acts by Defendant to be set forth at trial;

3. Judgment finding that Defendant has willfully infringed the Kason Marks;

4. Judgment against Defendant specifically including, but not limited to the following, to the extent allowed by law (including, but not limited to, 15 U.S.C. §§ 1116(d), 1117, and 1125; 15 U.S.C. §; trademark common law; and O.C.G.A. § 10-1-372):

c. actual monetary damages sustained by Plaintiff, or, in the alternative, statutory damages where such are authorized,

including but not limited to $200,000 per counterfeit mark per type of good;

d.  seizure of all counterfeit marks, including the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation;

e.  profits unlawfully earned by Defendant as a result of the unlawful acts;

f.  exemplary, punitive, and treble damages where such are authorized by law;

g.  costs and prejudgment interest;

h.  attorneys' fees; and

5.      Such other and further relief as the Court deems appropriate and just under the circumstances.

Dated: February 23, 2017                    Respectfully submitted,

                                            EVERSHEDS SUTHERLAND (US) LLP

                                            _/s/Ann G. Fort_____

                                            Ann G. Fort
                                            GA Bar No. 269995
                                            Robert R.L. Kohse
                                            GA Bar No. 863748
                                            999 Peachtree St. NE, Suite 2300
                                            Atlanta, GA 30309
                                            Telephone: (404) 853-8000
                                            Facsimile: (404) 853-8806
                                            annfort@eversheds-sutherland.com
                                            robkohse@eversheds-sutherland.com

                                            *Attorneys for Kason Industries, Inc.*

## VERIFICATION

Pursuant to 18 U.S.C. § 1746, I declare under penalty of perjury that the

statements of fact in the foregoing Verified Complaint are true and correct.

This 23rd day of February, 2017.

Burl M. Finkelstein
Executive Vice President and General Counsel
Kason Industries, Inc.

30