# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | | |
|---|---|---|
| KASON INDUSTRIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 3:17-cv-26-TCB |
| | ) | |
| ALLPOINTS FOODSERVICE PARTS AND SUPPLIES, LLC, | ) ) | |
| | ) | |
| DIVERSIFIED FOODSERVICE SUPPLY, LLC, | ) ) | |
| | ) | |
| D.S.I. PARTS, INC., | ) | |
| | ) | |
| FACTORY DIRECT WORLDWIDE, LLC, d/b/a FDW PARTS, | ) ) ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| FRANKLIN MACHINE PRODUCTS, INC.,and | ) ) | |
| | ) | |
| TUNDRA RESTAURANT SUPPLY, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>VERIFIED SECOND AMENDED COMPLAINT</u>

# **TABLE OF CONTENTS**

I.    PARTIES ................................................................................................1

II.   JURISDICTION AND VENUE ............................................................3

III.  PLAINTIFF KASON ...........................................................................7

      A.    Relevant Background .................................................................7

      B.    Kason's Intellectual Property Relevant to This Action .............8

IV.   DEFENDANT KKT AND ITS UNLAWFUL CONDUCT ..................14

V.    DEFENDANTS ALLPOINTS, DIVERSIFIED, DSI PARTS, FDW PARTS,
      FMP,  AND TUNDRA ...........................................................................19

      A.    Background ...............................................................................19

      B.    FDW Parts' Unlawful Conduct .................................................21

      C.    AllPoints' Unlawful Conduct ...................................................23

      D.    DSI Parts' Unlawful Conduct ...................................................36

      E.    FMP's Unlawful Conduct .........................................................38

      F.    Tundra's Unlawful Conduct ......................................................41

      G.    Diversified's Unlawful Conduct ...............................................50

VI.   KASON PROVIDES NOTICE OF REGISTRATION OF ITS MARKS, AND
      DEFENDANTS HAD ACTUAL NOTICE THAT KASON'S MARKS WERE
      REGISTERED ......................................................................................54

VII.  DEFENDANTS' HARMFUL ACTIONS ADVERSELY AFFECT KASON......55

            COUNT I (Trademark Infringement and Counterfeiting – 15 U.S.C. §
            1114) ..........................................................................................61

            COUNT II (Unfair Competition and False Designation of Origin – 15
            U.S.C. § 1125(a)) .......................................................................63

            COUNT III (Common Law Trademark Infringement).............................65

i

COUNT IV  (Georgia Unfair Competition and Deceptive Trade Practices O.C.G.A. § 10-1-372) .................................................................................67

JURY DEMAND .......................................................................................68

PRAYER FOR RELIEF ...........................................................................68

Pursuant to the Court's order dated March 6, 2018 (Doc. 53) and the Court's order dated July 11, 2017 dismissing KKT, Inc. (Doc. 36), Plaintiff Kason Industries, Inc. ("Kason" or "Plaintiff"), by and through its undersigned counsel, files this Verified Second Amended Complaint for trademark infringement, counterfeiting, unfair competition, and related causes of action, against AllPoints Foodservice Parts and Supplies, LLC, Diversified Food Service Supply, LLC, D.S.I. Parts, Inc., Factory Direct Worldwide, LLC d/b/a/ FDW Parts, Franklin Machine Products, Inc., and Tundra Restaurant Supply, LLC (hereinafter collectively referred to as "Defendants"), and alleges as follows:

## I.  PARTIES

1.      Kason is a Georgia corporation, with its principal place of business at 57 Amlajack Boulevard, Newnan, Georgia 30265.

2.      On information and belief, AllPoints Foodservice Parts and Supplies, LLC ("AllPoints") is a Delaware company, with its principal place of business at 607 West Dempster Street, Mount Prospect, Illinois 60056.  AllPoints can be served through its registered agent, CT Corporation System, at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

3.      On information and belief, Diversified Foodservice Supply, LLC ("Diversified") is a Delaware limited liability company, with its principal place of

business at 607 West Dempster Street, Mount Prospect, Illinois 60056.  Diversified can be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4.     On information and belief, D.S.I. Parts, Inc. ("DSI Parts") is an Ohio corporation, with its principal place of business at 234 Hiawatha Trail, Springboro, Ohio 45066.  DSI Parts can be served through its registered agent, CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

5.     On information and belief, Factory Direct Worldwide, LLC d/b/a FDW Parts.  FDW Parts is an Illinois limited liability company with its principal place of business at 230 Messner Drive, Wheeling, Illinois 60090.  FDW Parts can be served through its registered agent, CT Corporation System, at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

6.     On information and belief, Franklin Machine Products, Inc. ("FMP") is a New Jersey corporation with its principal place of business at 101 Mount Holly Bypass, Lumberton, New Jersey 08048.  FMP can be served through its registered agent, The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

7.     On information and belief, KKT, Inc. ("KKT") is a corporation organized under the laws of the State of Michigan, with its principal place of

business located at 31251 Industrial Road, Livonia, Michigan 48150.  KKT does business under the name Lockwood Manufacturing Company.

8.     On information and belief, Tundra Restaurant Supply, LLC ("Tundra") is a Delaware limited liability company, with its principal place of business at 607 West Dempster Street, Mount Prospect, Illinois 60056.  Tundra can be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## II.   **JURISDICTION AND VENUE**

9.     This is an action for, *inter alia*, trademark infringement and counterfeiting, false designation of origin, unfair competition, and related claims pursuant to 15 U.S.C. §§ 1, *et seq.*, including §§ 1114 and 1125(a), and for related claims of unfair competition under the laws of the State of Georgia.

10.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b). This Court has supplemental jurisdiction over Plaintiff's additional claims, pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's federal trademark infringement and counterfeiting claims, over which this Court has original jurisdiction, that the additional claims form part of the same case or controversy under Article III of the United States Constitution.

11.    This Court has personal jurisdiction over AllPoints, because AllPoints operates a fully-interactive website, www.allpointsfps.com, which allows residents and consumers in Georgia to place orders and purchase the infringing products at issue in this action.  As a result of that website, on information and belief, AllPoints sells, ships, and has sold and shipped infringing products and other products to Georgia residents located within the State of Georgia, and derives substantial revenue from Georgia residents.  Pursuant to O.C.G.A. § 9-10-91(1), this Court has specific personal jurisdiction over Allpoints for the causes of action set forth herein.

12.    This Court has personal jurisdiction over Diversified, because, on information and belief, Diversified has conducted business within this judicial district, and derives substantial revenue from Georgia residents.  Further on information and belief, Diversified has sold and shipped the infringing products at issue in this Action into this district.  For example, on its website, Diversified indicates that it is "[h]ighly diversified, with over 53,000 unique customers. ~250,000 locations serviced and an average order size of ~$200. . . Broad geographic reach with seven distribution facilities and same day shipping."

13.    This Court has personal jurisdiction over DSI Parts, because DSI operates a fully-interactive website, http://dsiparts.com/, which allows residents

and consumers in Georgia to place orders and purchase at least some of the infringing products at issue in this action.  As a result of that website, on information and belief, DSI sells, ships, and has sold and shipped infringing products and other products to Georgia residents located within the State of Georgia, and derives substantial revenue from Georgia residents.  Pursuant to O.C.G.A. § 9-10-91(1), this Court has specific personal jurisdiction over DSI Parts for the causes of action set forth herein.

14.    This Court has personal jurisdiction over FDW Parts.  On information and belief, FDW Parts has sold and shipped products into this district, and derives substantial revenue from Georgia residents.  Further on information and belief, FDW Parts has sold and shipped the infringing products at issue in this action into this district.  FDW Parts also operates a website, www.fdwparts.com, which is available to and accessible by Georgia residents to view FDW Parts' products. Pursuant to O.C.G.A. § 9-10-91(1), this Court has specific personal jurisdiction over FDW Parts, because Georgia customers can obtain information and, on information and belief, purchase FDW Parts' products via its website.  On information and belief, FDW Parts ships and has shipped infringing products to Georgia residents located within the State of Georgia.

15.    This Court has personal jurisdiction over FMP, because FMP operates a fully-interactive website, www.fmponline.com/ecomm/Shop, which allows residents and consumers in Georgia to place orders and purchase the infringing products at issue in this action.  As a result of that website, on information and belief, FMP ships and has shipped infringing products and other products to Georgia residents located within the State of Georgia, and derives substantial revenue from Georgia residents.  Pursuant to O.C.G.A. § 9-10-91(1), this Court has specific personal jurisdiction over FMP for the causes of action set forth herein.

16.    This Court has personal jurisdiction over Tundra, because Tundra operates a fully-interactive website, www.etundra.com, which allows residents and consumers in Georgia to place orders and purchase infringing products at issue in this action.  As a result of that website, on information and belief, Tundra ships and has shipped infringing products and other products to Georgia residents located within the State of Georgia, and derives substantial revenue from Georgia residents.  Pursuant to O.C.G.A. § 9-10-91(1), this Court has specific personal jurisdiction over Tundra for the causes of action set forth herein.

17.    Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), because a substantial part of the events and injury giving rise to Kason's claims have occurred and continue to occur in this district.

### III.  **PLAINTIFF KASON**

#### A. **Relevant Background**

18.    Since the 1920's, Kason has been and continues to be engaged in the business of developing refrigeration and restaurant equipment hardware in the United States.

19.    Today, Kason is headquartered in Newnan, Georgia, where its facilities include nearly 250,000 square feet of manufacturing plants and offices. Over the years, Kason has created hundreds of innovative, reliable products and has grown in size, sophistication, and reputation to become a leading manufacturer of commercial refrigeration and restaurant equipment hardware in the United States.

20.    The commercial refrigeration and restaurant equipment hardware industry into which Kason sells its products includes at least two types of customers: original equipment manufacturers ("OEMs") and replacement hardware distributors.  OEMs purchase and incorporate certain hardware, such as a door latch or door hinge, into the final products that they manufacture, such as commercial refrigerators and other restaurant equipment purchased by end-user customers.  Replacement hardware distributors sell hardware components, such as individual door latches and door hinges, to equipment owners, such as restaurants

or repair companies, who need to replace the original hardware.

**B. <u>Kason's Intellectual Property Relevant to This Action</u>**

21.     In 1963, the United States Patent and Trademark Office awarded

Kason Trademark Registration Nos. 744,632 (the "'632 Mark") and 744,763 (the

"'763 Mark") for the word "KASON," noting Kason's long use of the KASON

mark in connection with refrigeration and restaurant equipment hardware as far

back as "about 1928."

22.     In around 1957, Kason began selling a latch for use in commercial

refrigeration and restaurant equipment, which has been designated with the Kason

part number "0533" (the "Kason 0533 Latch").  A photograph of the Kason 0533

Latch, as currently offered by Kason, is shown below:



23.     The United States Patent & Trademark Office has recognized the distinctive appearance of the Kason 0533 Latch as a trademark belonging exclusively to Kason.  As such, Kason owns U.S. Trademark Registration No. 2,590,113 (the "'113 Mark"), for the appearance of the Kason 0533 Latch:



Image from U.S. Trademark Registration No. 2,590,113

24.     In 1992, the United States Patent and Trademark Office awarded Kason Trademark Registration No. 1,717,452 (the "'452 Mark") for the following stylized Kason name, sometimes known as the "Kason Parallelogram" Mark:



9

25.     In 1997, Kason began selling another latch for similar use in commercial refrigeration and restaurant equipment, which is designated with the Kason part number "0544" (the "Kason 0544 Latch").  A photograph of the Kason 0544 Latch, as currently offered by Kason is shown below:



**0544 COMPACT MAGNETIC EDGEMOUNT LATCH**

- Compact size for smaller heated cabinets where space is limited.
- Non-heat conducting composite, offset handle.
- Kason's time-tested magnetic latching system.
- Breaker action releases magnet for easy opening.
- Operates smoothly with handle mounted up or down.
- Not affected by door sag.
- Use on right- or left-opening doors.

26.    The United States Patent & Trademark Office has recognized the distinctive appearance of the Kason 0544 Latch as a trademark belonging exclusively to Kason.  As such, Kason owns U.S. Trademark Registration No. 4,906,919 (the "'919 Mark"), for the appearance of the Kason 0544 Latch:



| Image from U.S. Trademark Registration No. 4,906,919 |
| :---: |

27.    The United States Patent & Trademark Office has also recognized the ornamental design of the Kason 0544 Latch, and awarded Kason U.S. Design Patent No. D391,141 (the "Kason Patent"), as shown below:



| Image from U.S. Design Patent No. D391,141 |
| :---: |

28.    By virtue of the issuance of the Kason Patent, as of at least the issue date, the design claimed by the Kason Patent (the same design as embodied in the

'919 Mark) was deemed unique, and non-functional.  A true and correct copy of the Kason Patent is attached hereto as Exhibit A.

29.     Over the years, and in recognition of the distinctive appearance of other Kason products, the United States Patent and Trademark Office awarded numerous additional trademark registrations to Kason.

30.     Relevant to this action, the trademark registrations awarded to Kason include:

| Kason TM Registration | Text/Image from Trademark Registration |
|---|---|
| The '632 Mark for the word "KASON" | KASON |
| The '763 Mark for the word "KASON" | KASON |
| The '452 Mark for the Kason Parallelogram Mark |  |
| The '113 Mark for the appearance of the Kason 0533 latch |  |

| | |
|---|---|
| The '919 Mark for the appearance of the Kason 0544 latch |  |
| Trademark Registration No. 2,319,965 (the "'965 Mark") for the appearance of Kason's Product No. 0171 latch |  |
| Trademark Registration No. 2,349,251 (the "'251 Mark") for the appearance of Kason's Product No. 0215 hinge |  |
| Trademark Registration No. 2,437,925 (the "'925 Mark") for the appearance of Kason's Product No. 0217 hinge |  |
| Trademark Registration No. 2,181,603 (the "'603 Mark") for the appearance of Kason's Product No. 0056 latch |  |

| Trademark Registration No. 2,227,009 (the "'009 Mark") for the appearance of Kason's Product No. 0058 latch |  |
| --- | --- |

31.     True and correct copies of the '632 Mark, the '763 Mark, the '452 Mark, the '113 Mark, the '919 Mark, the '965 Mark, the '251 Mark, the '925 Mark, the '603 Mark, and the '009 Mark (collectively, the "Kason Marks") are attached hereto as Exhibits B, C, D, E, F, G, H, I, J, and K, respectively.

## IV.   DEFENDANT KKT AND ITS UNLAWFUL CONDUCT

32.     KKT is a seller of, *inter alia*, food service equipment, such as storage and display cabinets.  (*See* www.lockwoodusa.com).

33.     From about May 2010 and until about June 10, 2014, KKT purchased from Kason the Kason 0544 latches for use with and mounting to KKT's food service equipment.

34.    During the February 9-11, 2017 National Association of Food Equipment Manufacturers show ("NAFEM") in Orlando, Florida, KKT displayed a number of cabinets and other equipment in KKT's display booth, as shown below:

 

(Exhibit L).

35.    Latches that appeared to be Kason 0544 latches were mounted to these KKT cabinets.  These latches incorporated into the KKT cabinets were virtually identical in appearance to the Kason 0544 latches, and were mounted in

the same manner and location to the KKT cabinets as the Kason 0544 latches, but were, in fact, unauthorized copies of the Kason 0544 latch.

36.    KKT also sells those latches via third party websites, such as www.ACityDiscount.com, as depicted below:



(Excerpt from Exhibit M) (red circles added).

37.    Kason purchased the KKT latches from another third party reseller, Heritage Parts.  The KKT latches from Heritage Parts are advertised as having "Manufacturer Part #: HAN-CA."  (Exhibit N).  Those "Han-Ca" latches sold by KKT are virtually identical in appearance to the Kason 0544 latch:





(Exhibit O).

38.    But, KKT's Han-Ca latch does not include the Kason Parallelogram

Mark or the part number on the bottom of the metal latch body:



(Exhibit P)(annotations added).

39.    Upon closer inspection, however, Kason discovered unique markings *inside* of KKT's molded plastic handle.  For example, KKT's product is stamped with Kason's '452 Mark and Kason's part number:



(Exhibit Q).

18

40.     KKT's latches are virtually identical to the Kason '919 Mark and also include the Kason '452 Mark:



| Kason Marks | KKT's Infringing Product |
|---|---|
| (The '919 Mark) | |
| (The '452 Mark) | |

41.     KKT was making, using, offering for sale, selling, and/or importing into the United States, the Han-Ca Latch, without Kason's permission.

42.     Kason and KKT are both direct and indirect competitors in the commercial restaurant equipment industry, for at least sales of latches.

## V.     DEFENDANTS ALLPOINTS, DIVERSIFIED, DSI PARTS, FDW PARTS, FMP,  AND TUNDRA

### A. Background

43.     On information and belief, Defendants AllPoints, DSI Parts, FDW Parts, FMP, and Tundra are commonly owned by Defendant Diversified. Diversified created AllPoints in around 2008, after consolidating other restaurant

replacement parts companies. Diversified then began acquiring other companies in the restaurant equipment replacement parts industry, including Tundra in 2010, FMP in 2012, and DSI Parts in 2015. *See* dfsupply.com/our-history/.

44. AllPoints, Diversified, DSI Parts, FDW Parts, FMP, and Tundra are in the replacement hardware distribution business, and each sell restaurant equipment parts from different suppliers by way of their websites: www.allpoints.com, www.dfsupply.com, www.dsiparts.com, www.fdwparts.com, www.fmponline.com/ecomm/Shop, and www.etundra.com, respectively.

45. Kason sells replacement parts to AllPoints, DSI Parts, FMP, and Tundra, and those distributors sell the Kason products and other products to the consuming public.

**B.  FDW Parts' Unlawful Conduct**

46.    On information and belief, FDW Parts imported into the United States the infringing Han-Ca latches and sold them to KKT.  Further on information and belief, FDW Parts sold at least 500 of the Han-Ca latches to KKT (Exhibit R), and possibly as many as 9,000 or more of that product to KKT and others.

47.    The Han-Ca latch marketed and sold by FDW Parts infringes at least the following Kason Marks:



| Kason Marks | FDW Part's Infringing Product |
|---|---|
| (The '919 Mark) | |
| (The '452 Mark) | |

48.    FDW Parts has been marketing and selling, and continues to market and sell, the infringing Han-Ca latch without Kason's permission or authorization, in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

21

49.     On information and belief, FDW Parts sells the infringing Han-Ca latch at a price believed to be lower than Kason's price.

50.     On information and belief, FDW Parts has been copying and continues to copy and sell other Kason products, in addition to the Kason 0544 latch, to customers, in violation of 15 U.S.C. §§ 1114(1)(a), (b) and/or 1125(a). Further on information and belief, FDW Parts markets and sells products that infringe some or all of the Kason Marks, in violation of 15 U.S.C. §§ 1114(1)(a), (b) and/or 1125(a).

51.     Kason and FDW Parts are both direct and indirect competitors in the commercial restaurant equipment replacement parts industry.

## C. **AllPoints' Unlawful Conduct**

52.    Through its website, AllPoints markets and sells restaurant equipment replacement parts, including refrigeration parts.

53.    Upon further inspection by Kason, AllPoints markets and sells unauthorized copies of Kason products through its website, and also markets products which may or may not be genuine Kason products, using the confusing communications detailed below.  As a result of AllPoints' conduct, it has caused, and continues to cause, confusion and mistake by the consuming public that certain products offered by AllPoints are genuine Kason products.

54.    For example, AllPoints offers and sells part number 26-6176, the "Cover, Hinge (Kason 215)," as shown below:



(Exhibit S).

55.     Although use of the name "Kason" in the product title seems to indicate it is a Kason product, the product actually sold by AllPoints is a copy of the genuine trademark protected Kason product.

56.     This hinge product sold by AllPoints as part number 26-6176 is an unauthorized copy of the Kason 0215 hinge, evidenced by the fact that the back of the AllPoints' product does not bear the "Kason" trademark, like the genuine Kason product does, as shown below:

| Kason's Genuine 0215 Hinge (back view) | AllPoints' "Cover, Hinge (Kason 0215)" (back view) |
|---|---|
|  (Exhibit T) | (Exhibit U) |

57.     The appearance of the Kason 0215 Hinge product is protected by the

'251 Mark.  As a result, by copying, marketing and selling unauthorized copies of

the Kason product, AllPoints infringes the '251 Mark:

| Kason's '251 Mark | AllPoints' "Cover, Hinge (Kason 215)" |
|---|---|
|  | |
| | (Exhibit V) |

58.     Therefore, AllPoints is in violation of 15 U.S.C. §§ 1114(1)(a), (b)

and 1125(a).

59.     By way of another example, on its website, AllPoints offers part number 22-1078 "Handle with Strike," but does not identify the source of that product, as shown below:



(Exhibit W).

60.     On information and belief, the above photograph of the "Handle with Strike" is actually a photograph of a Kason Product No. 0533 latch, the appearance of which is protected by the Kason Mark '113 Mark.

61.     That depiction of the "Handle with Strike," without identifying whether or not it is a genuine Kason product, creates confusion in the marketplace, because the consumer cannot determine whether or not AllPoints offers a genuine Kason product.

62.     And, in fact, despite its depiction of Kason's trademarked Product No.

0533 latch, AllPoints does not deliver a genuine Kason product when a customer

orders part number 22-1078 "Handle with Strike."  Instead, AllPoints actually

delivers the product of Kason's competitor, Component Hardware Group:

| Product on the AllPoints Website (Kason product depicted) | Product actually delivered (Component Hardware Group product) |
|---|---|
|  | |
| (*Id.*) | (Exhibit X) |

63.     As a result, AllPoints causes consumer confusion by depicting

Kason's well-known, trademarked 0533 latch, but actually delivering a different

product.  Kason has lost sales as a result of AllPoints' misleading sales tactics.

Therefore, AllPoints is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

64.     Further confusing the consumer, the AllPoints website also indicates
that the 22-1078 "Handle with Strike" part "Replaces the following Manufacturer's
Products," and lists various product numbers and also product a number of Kason's
competitor, Component Hardware Group:

**Replaces the following Manufacturer's Products**

OEM Numbers are used for reference only, see Policies for more details.

| OEM Names | OEM # |
|---|---|
| ALTO SHAAM | HD-2007 |
| VULCAN HART | 00-851800-00008 |
| CHG (Component Hardware Group) | R26-1000 |
| HOBART | 00-851800-00008 |
| HOBART | 851800-8 |
| VULCAN HART | 851800-8 |
| WITTCO | 00-851800-00008 |
| WITTCO | 851800-8 |
| WITTCO | WP-107 |

(Exhibit W).  Therefore, AllPoints is in violation of 15 U.S.C. § 1125(a).

65.     AllPoints unlawfully and unfairly utilizes the protected appearance of
Kason's products to confuse the consuming public about which product AllPoints
is actually selling and delivering to the consumer.  Therefore, AllPoints is in
violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

66.    By way of another example, on its website, AllPoints offers part number 22-1096, "Latch with Strike," but does not identify the source of that product, as shown below:



(Exhibit Y).

67.    On information and belief, the above photograph of the "Latch with Strike" is actually a photograph of a Kason Product No. 0171 latch, the appearance of which is long-recognized by consumers and protected by the '965 Mark.

68.    AllPoints' depiction of the "Latch with Strike," without identifying whether or not it is a genuine Kason product, creates confusion in the marketplace, because the consumer cannot determine whether or not AllPoints offers a genuine Kason product.

69.    Further confusing the consumer, the AllPoints website for that product

references a Kason product number and also a product number of Kason's

competitor, Component Hardware Group:

**Description**

MAGNETIC LATCH W/ LOCK & STRIKE,
1-3/16" X 11-1/2", 4-3/16" INNER MOUNT
HOLE CENTERS
5-7/8" OUTER MOUNT HOLE CENTERS
ALTO-SHAAM
OVEN COOK/HOLD UNITS W/MAGNETIC
LATCH.
250-TH, AS-(25,250), CH-(25,50-1,75-1),
SERIES: 500-TH-II, 750-TH-II, 1000-(TH-I,TH-
II),
CH-100.
WARMER HOLDING CABINETS
W/MAGNETIC LATCH.
SERIES: 500-S, 750-S, 1000-(BQ2,S,UP,UPS),
HENNY PENNY WARMER HC-
(900,903,906,908,934DA).
WELLS WARMER MDBC-1
KASON SERIES 171
CHG SERIES R25

**Replaces the following Manufacturer's Products**

OEM Numbers are used for reference only, see Policies for more details.

| OEM Names | OEM # |
| --- | --- |
| CHG (Component Hardware Group) | R25-1700-C |
| CHG (Component Hardware Group) | R25-1700C |

(*Id.*)

30

70.     And, in fact, despite its depiction of Kason's trademarked Product No.

0171 latch, AllPoints does not deliver a genuine Kason product when a customer

orders part number 22-1096 "Latch with Strike."  Instead, AllPoints actually

delivers the product of Kason's competitor, Component Hardware Group:

| Product on the AllPoints Website (Kason product depicted) | Product Actually Delivered (Component Hardware Group product) |
|---|---|
|  (Exhibit Y) | (Exhibit Z) |

71.     As a result, AllPoints causes consumer confusion by depicting

Kason's well-known, trademarked 0171 latch, but delivering a different product.

Kason has lost sales as a result of AllPoints' misleading sales tactics.  Therefore,

AllPoints is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

72.     By way of another example, on its website, AllPoints offers part number 26-1584, "Hinge," but does not identify the source of that product, as shown below:



(Exhibit AA).

73.     On information and belief, the above photograph of the "Hinge" is actually a photograph of a Kason Product No. 0217 hinge, the appearance of which is protected by the '925 Mark.

74.     AllPoints' depiction of the "Hinge," without identifying whether or not it is a genuine Kason product, creates confusion in the marketplace, because the consumer cannot determine whether or not AllPoints offers a genuine Kason product.

75.    Further confusing the consumer, the AllPoints website for that

"Hinge" product references a Kason product number, and also a product number of

Kason's competitor, Component Hardware Group:

**Description**

EDGEMOUNT HINGE, CHROME
OFFSET 1"
LENGTH 5-1/2"
WIDTH 1-1/16"
SCREW CENTERS 1-3/16"
OUTSIDE SCREW CENTERS 2-3/8"
FOR LEFT OR RIGHT
SERIES 217, 218, R42-2000
ACCEPTS SPRING R42-2810

**Replaces the following Manufacturer's Products**

OEM Numbers are used for reference only, see Policies for more details.

| OEM Names | OEM # |
|-----------|-------|
| CHG (Component Hardware Group) | R42-2000 |
| KASON | 217-000012 |

(*Id.*)

33

76.     And, in fact, despite its depiction of Kason's trademarked Product No.

0217 hinge, AllPoints does not deliver a genuine Kason product when a customer

orders part number 22-1584 "Hinge."  Instead, AllPoints actually delivers the

product of Kason's competitor, Component Hardware Group:

| Product on the AllPoints Website (Kason product depicted) | Product actually delivered by AllPoints (Component Hardware Group product) |
|---|---|
|  (*Id.*) | (Exhibit BB) |

77.     As a result, AllPoints causes consumer confusion by depicting

Kason's well-known, trademarked 0217 hinge, but actually delivering a different

product.  Kason has lost sales as a result of AllPoints' misleading sales tactics. Therefore, AllPoints is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

78.    AllPoints unlawfully, unfairly, and deceptively utilizes Kason's protected intellectual property rights to confuse the consuming public about the true source of the above-mentioned products, among other products on the AllPoints website.

79.    Kason and AllPoints are both direct and indirect competitors in the commercial restaurant equipment replacement parts industry.

**D. DSI Parts' Unlawful Conduct**

80.    Through its online website, DSI Parts offers and sells restaurant equipment replacement parts.  DSI Parts sells genuine Kason parts through its website.

81.    However, upon further investigation, DSI Parts also confusingly markets products that may or may not be genuine Kason products.  For example, as shown below, DSI Parts markets product number 300-0056 as a "Kason K-56" latch:



(Exhibit CC).

82.    But the photograph depicted above and on the DSI Parts website is a photograph of a similar product made by Kason's competitor, Component Hardware Group.  As a result, DSI Parts causes consumer confusion by referring to

"Kason," but showing the product of Kason's competitor.  Therefore, DSI Parts is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

83.    DSI Parts unlawfully, unfairly, and deceptively utilizes Kason's trademarked name to confuse the consuming public about the source of at least the above-mentioned product on the DSI Parts website.

84.    Kason and DSI Parts are both direct and indirect competitors in the commercial restaurant equipment replacement parts industry.

### E. **FMP's Unlawful Conduct**

85.     Through its online website, FMP offers and sells restaurant equipment replacement parts.  FMP sells genuine Kason products through its website.

86.     However, upon further inspection by Kason, FMP also offers and sells products confusingly similar to genuine Kason products, such as the generically labeled "Latch (w/ Cylinder Lock)," shown below:




**122-1103**
**LATCH (W/ CYLINDER LOCK)**

**FMP List Price: 424.94 Each**
**IN STOCK**
1 In Stock
>>Warehouse.Quantity<< In All Warehouses
>>Warehouse.Quantity.Description<< Warehouse Qty Description?

Copy the link below to share this item.
https://www.fmponline.com/?p=1221103EACH

Quantity:    1    +Add To Cart
                  ★Add To Favorites

(Exhibit DD).

87.     FMP does not identify the manufacturer of that product, but, on information and belief, the above photograph is of a Kason Product No. 56 latch.

88.     Since at least as early as 1963, Kason's product number 056 latch has been promoted and sold extensively throughout the United States by Kason. Consumers have long recognized the appearance of that latch and its sister latch,

38

the Kason product number 058 latch, as trademarked products produced

exclusively by or for Kason.  Those Kason products are protected by the '603

Mark and the '009 Mark.

89.    That depiction of the Kason trademarked product, without

identifying whether or not it is a genuine Kason product, creates confusion in the

marketplace, because the consumer cannot determine whether or not FMP offers a

genuine Kason product.

90.    Further confusing the consumer, FMP also provides "Part Reference

Info" for this "Latch" product that lists various Kason product numbers and also

product numbers of Kason's competitor, Component Hardware Group:



(*Id.*)

91.     FMP unlawfully and unfairly utilizes a photograph of Kason's trademarked product and Kason's trademarked name to confuse the consuming public about the true source of this "Latch" product.

92.     As a result, FMP further unlawfully infringes the "Kason" word marks, the '632 and '763 Marks, as well as the '603 and '009 Marks, by confusingly referring to Kason and Component Hardware Group in the "Part Reference Info" on its website.

93.     Furthermore, FMP depicts additional products on its website in a similar, confusing manner.  Therefore, FMP is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

## F. **Tundra's Unlawful Conduct**

94.     Tundra operates a website, www.etundra.com, to market and sell

restaurant equipment parts, including refrigeration parts.  Tundra, through its

website, sells genuine Kason products.

95.     Upon further inspection by Kason, Tundra markets and sells

unauthorized copies of Kason products through its website, and also confusingly

markets products which may or may not be Kason products, as detailed below.  As

a result of Tundra's conduct, it has caused, and continues to cause, confusion and

mistake by the consuming public that certain products offered by Tundra are

genuine Kason products.

96.     For example, Tundra sells the "Original Parts - 264047 – Kason 215

Cam Lift Offset Door Hinge," shown below:



(Exhibit EE).

97.     Although the name of the product, which states "Kason," seems to indicate it is a Kason product, the product is not a genuine Kason product.

98.     Instead, that product sold by Tundra is an unauthorized copy of the Kason 0215 hinge, evidenced by the fact that the back of the Tundra product lacks the "Kason" trademarks shown on the back of the genuine Kason product:

| Kason's Genuine 0215 Hinge (back view) | "Tundra Original Parts – 264047 – Kason Cam Lift Offset Door Hinge" (back view) |
|---|---|
|  (Exhibit T) | (Exhibit FF) |

99.     The appearance of the Kason product is protected by the '251 Mark. As a result, Tundra's marketing and selling of an unauthorized copy of the Kason product infringes Kason's '251 Mark:

| Kason's '251 Mark | "Tundra Original Parts – 264047 – Kason Cam Lift Offset Door Hinge" |
|---|---|
|  | |
| | (Exhibit GG) |

100.    Therefore, Tundra is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

101.    By way of another example, Tundra also markets the following latch, identified as the "Lockwood – HAN-CA" latch, on its website:



**LOCKWOOD - HAN-CA-V02 - MAGENETIC DOOR LATCH**

SKU: 26583

**Price: $48.53/EA**

Shipping Info: Usually Ships Within 1-3 Business Days, M-F

| 1 | ADD TO CART |

☆☆☆☆☆ **0.0**   (No reviews)

Be the first to Write a Review

(Exhibit HH).

102.    On information and belief, that latch is the same latch that KKT marketed and sold, as detailed in Section IV, *supra*.  The Lockwood Han-Ca latch infringes at least Kason's '919 and '452 Marks.  Therefore, Tundra is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

103.    By way of another example, Tundra markets products as "Original Parts," but at least some of those products are actually Kason products.  By omitting Kason's name from the product description, Tundra creates confusion in the marketplace about the actual origin of replacement parts.  Therefore, Tundra is in violation of 15 U.S.C. § 1125(a).

104.    For example, through its website, Tundra sells the "Original Parts - 221119 - Latch," as shown below:



(Exhibit II).

105.   Tundra creates confusion in the marketplace by using an image of Kason's latch and marketing the product as "Original Parts," but not accurately identifying that product as a genuine Kason product.

106.   By way of another example, the following door closer, having Kason product number 1095 in the title, is shown as an "Original Parts" product:



45

(Exhibit JJ) (red circle added).

107.   Noticeably absent in the above textual description is any indication that the part is a Kason product.  However, the photograph seems to indicate that it is a Kason product (see red circle) being offered, but not in a way that a purchaser would notice as identifying the source of the advertised item.  As a result of this portrayal, and other similar portrayals on the Tundra website, Tundra obfuscates whether a product is actually a Kason product, or an "Original Parts" product.

108.   By way of another example, Tundra's parts catalogue confusingly depicts Kason's products by (1) using the same photographs to depict its competitor Component Hardware Group's products; or (2) not identifying whether a product is a genuine Kason product.  As a result, Tundra creates confusion in the marketplace as to the source of certain products, as exemplified below:

## STRAIGHT HANDLE LATCHES AND STRIKES



**CHG Part No. R35**
- Mechanical latch
- $10^3/_4$" high
- $5^1/_4$" hole center



| Item No. | Lock |
|----------|------|
| 21100 | No |
| 21101 | Yes |
| 21102 | Strike Only |



**Kason Part No. 174**
- Mechanical latch
- $10^3/_4$" high
- $5^1/_4$" hole center

| Item No. | Lock |
|----------|------|
| 21112 | No |

## STRAIGHT HANDLE LATCHES AND STRIKES



**CHG Part No. R26**
- Mechanical latch
- $9^1/_4$" high
- $4^1/_4$" hole center

| Item No. | Lock |
|----------|------|
| 21105 | No |
| No. 21106 | Strike Only |

**Kason Part No. 533**
- Mechanical latch
- $9^5/_{16}$" high
- $5^1/_4$" hole center

| Item No. | Lock |
|----------|------|
| 21129 | No |



**CHG Part No. R25**
- Magnetic latch
- 11$\frac{1}{2}$" high
- 5$\frac{7}{8}$" hole center

| Item No. | Lock |
|----------|------|
| 21125 | No |
| 21126 | Yes |



**Kason Part No. 0171**
- Magnetic latch
- 11$\frac{1}{2}$" high
- 5$\frac{7}{8}$" hole center

| Item No. | Lock |
|----------|------|
| 21104 | Yes |



**Kason Part No. 0172**
- Magnetic latch
- 10$\frac{17}{32}$" high
- 5$\frac{1}{4}$" hole centers

| Item No. | Lock |
|----------|------|
| 21117 | No |



**CHG Part No. R24**
- Magnetic latch
- 10$\frac{3}{4}$" high
- 5$\frac{7}{8}$" hole centers

| Item No. | Lock |
|----------|------|
| 21123 | No |
| No. 21122 | Strike Only |

Will also replace Part Nos. 2824 and 9175



## WARMER LATCH AND STRIKE
### No. 21110



- $\frac{5}{8}$" and 4$\frac{3}{16}$"
- Heat proof handle
- Number on back is 170



| | **No. 21181** |
| | Mounting Screw Kit |

48

**DOOR HARDWARE**



| **No. 21125** Latch | **No. 21105** Latch | **No. 21403** Hinge | **No. 21408** Hinge |
|---|---|---|---|
| No. on back 171 or R25 | No. on back 533 or R26 | No. on back 217 or R42 | No. on back 215 or R45 |

(Exhibit KK).  Therefore, Tundra is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

## G. **Diversified's Unlawful Conduct**

109.   Diversified, AllPoints, and Tundra also market and sell restaurant equipment parts through another website, called "Original Parts," located at www.OriginalParts.com.

110.   According to that website, "Original Parts is owned by Diversified Foodservice Supply, Inc."  (Exhibit LL).  However, when attempting to purchase products through the Original Parts website, AllPoints and Tundra actually fulfill the order.

111.   The Original Parts website purports to be "the smart choice in sourcing parts."  That website explains the theory behind the "Original Parts" products:

> You could buy an OEM part from an OEM distributor and pay for the extra step of distribution and the OEM stamp and of course, it would be a good choice. Or you choose an Original Part, which is in most cases, the same exact part, built to the same specification, just without the OEM branding.

(Exhibit MM).

112.   According to that statement on the Original Parts website, Original Parts admits it is actively copying and selling counterfeit copies of Kason's protected products as the heart of its business model.

113.   For example, at least one of the products misleadingly and confusingly offered on OriginalParts.com as a "Kason" part infringes certain Kason Marks:

| Kason Marks | "Original Parts" |
|---|---|
| The '251 Mark:<br><br>The '632 and '763 word marks for "KASON" | <br>(Exhibit NN) |

114.   Clicking the "+WHERE TO BUY" button on the webpage of the above-noted product reveals contact information for AllPoints and/or Tundra, evidencing that those Defendants are the sellers of the infringing products:



(Exhibit OO).

115.   As detailed above, AllPoints and Tundra do not sell the genuine Kason 0215 hinge product, but instead sell unauthorized copies of the Kason product.  Therefore, Diversified is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

116.   Additionally, products offered through the Original Parts website create confusion in the marketplace by marketing the product as "Original Parts," but not accurately identifying those products as genuine Kason products.  Thus,

Diversified, AllPoints, and Tundra have been marketing and/or selling, and continue to market or sell, products which infringe some or all of the Kason Marks. Therefore, Diversified is in violation of 15 U.S.C. § 1125(a).

## VI.   KASON PROVIDES NOTICE OF REGISTRATION OF ITS MARKS, AND DEFENDANTS HAD ACTUAL NOTICE THAT KASON'S MARKS WERE REGISTERED

117.   Pursuant to 15 U.S.C. § 1111, Defendants have had constructive and actual notice that Kason's word marks (the '632, '763, and '113 Marks) are registered marks.  After many years of purchasing Kason's products, the Diversified Defendants very likely know that the "Kason" word marks are registered.  This fact is exemplified by Defendants' omission of some – but not all – of those registered marks when copying Kason's 0544 latch and 0215 hinge.  Furthermore, AllPoints' online catalog includes the statement that "ALL OEM NAMES MENTIONED IN THIS CATALOG ARE REGISTERED TRADEMARKS."  Those facts show the Diversified Defendants are aware that Kason's word marks are registered.

118.   Pursuant to 15 U.S.C. § 1111, Kason has provided notice that its trade dress marks are registered by displaying the "®" in its product catalogs since about 2006.  For example, Defendants produced documents DIVERSIFIED-001186, -88, Diversified-001357, -62, -74, and -80, which are pages from a Kason product catalog that bears a copyright date of 2006 and shows the "®" next to Kason part nos. 0533, 0171, 056, 058, 0215, and 0217, providing notice in accordance with 15 U.S.C. § 1111.  Thus, (1) Defendants had actual notice of

54

Kason's registered trade dress regarding certain products; and (2) Kason has provided sufficient notice that the appearance of its products are protected by the '113, '965, '251, '925, '603, and '009 Marks.

## VII.  DEFENDANTS' HARMFUL ACTIONS ADVERSELY AFFECT KASON

119.   As a result of the foregoing, Defendants have been marketing and/or selling, and continue to market or sell, products which infringe some or all of the Kason Marks.

120.   Kason, AllPoints, Diversified, DSI Parts, FDW Parts, FMP, and Tundra are direct and indirect competitors in the commercial restaurant equipment industry, at least for the sales of replacement restaurant equipment parts.  Kason and KKT are indirect competitors in the commercial restaurant equipment industry, at least for the sales of latches.

121.   The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that copies of Kason products offered for sale and sold by Defendants are genuine products of Kason.

122.   Kason and Defendants market to and try to influence the same group of customers to purchase their wares.  But Defendants do so by unlawfully copying

Kason's products, displaying Kason's trademarks, and infringing Kason's intellectual property rights.  Defendants are offering the infringing products at lower prices, and on information and belief, of different, and in many cases, lesser quality and without undergoing the testing standards that Kason requires of products bearing the famous Kason name and other marks, which symbolize Kason's reputation and goodwill.  By infringing Kason's intellectual property rights, Defendants unlawfully and without authorization from Kason seek to gain the benefit of Kason's reputation for strict quality standards that Kason's customers have come to recognize through Kason's trademarks.

123.   Defendants' infringing products are also deficient because, on information and belief, those products are not NSF (National Sanitation Foundation) certified, which causes harm to Kason for the same reasons.

124.   Those actions by Defendants are causing harm to Kason, including price erosion, loss of sales, loss of goodwill, damage to the market for the trademarked goods, damage to reputation, and lost business opportunities.

125.   Each sale by Defendants of the infringing products is a lost sale for Kason, causing a loss in market share, revenue, and the business opportunities reflected by such.

126.   Kason's goodwill also is at risk if Defendants do not immediately stop infringing the Kason Marks.  By copying Kason's products and/or offering those products as competitive products, Defendants are trading off of Kason's reputation and goodwill as a leading innovator in the field of restaurant equipment components symbolized by Kason's Marks.  As a result, Defendants gain a competitive advantage in influencing purchasers of restaurant equipment bearing the Kason's Marks and also unfairly gain a potential foothold in the market with customers, which irreparably harms Kason as the single source of origin for the trademarked Kason products.  Furthermore, Defendants' actions irreparably harm Kason's opportunity to strengthen its relationships with customers as the sole supplier of the trademarked Kason products.

127.   Defendants' infringement further harms Kason, because Defendants will unfairly gain entry into the market for restaurant equipment products bearing the Kason Marks, including selling related replacement parts in the future, as well as the aftermarket for repairs, all as a result of Defendants' infringing activity.

128.   Kason's OEM customers purchase and incorporate Kason's parts into the products they manufacture, including commercial restaurant equipment.  After time, the customers will often need replacement parts and aftermarket repairs.  As would be expected, those customers turn to Kason.

129.   Once a customer has made investments of time, energy and resources into choosing certain hardware and parts from one manufacturer, and has confirmed that the finished product meets all applicable codes and desires, it is reluctant to change manufacturers and/or products and, as a consequence, it becomes very difficult for another manufacturer to sell competing hardware to the customer.  Additionally, once a piece of hardware is installed and in use, the hardware manufacturer gains the intangible benefit of beginning to build a stronger relationship with the end users who become familiar with the hardware through actual day-to-day use.  For these reasons, Kason commonly invests a substantial amount of time, energy and resources into developing, patenting, certifying, registering, marketing and selling new products, to customers with the reasonable expectation that there will be a substantial return on its investments as the new products emerge in the marketplace, and as replacement parts and repairs are needed.  As a result, once Defendants misuse the appearance of the non-Kason Latch to convince a customer to order products from Defendants instead of Kason, Kason is immediately and irreparably harmed.

130.   On information and belief, Defendants' infringing products are unauthorized copies of Kason parts, and are not NSF certified.  Thus the infringing products are deficient in at least those respects.  NSF certification requires

compliance with strict standards and procedures, undergoing extensive product

testing and material analysis.  The Kason products at issue herein are NSF

certified.  (*See*

http://info.nsf.org/Certified/Food/Listings.asp?Company=25800&Standard=002).

131.   Kason invested substantially in developing, patenting, trademarking,

creating, achieving NSF certification, improving, and marketing its products.  By

doing so, Kason created a demand for the products represented by the Kason

Marks among customers and others in this market.  Kason reasonably expected the

trajectory of its development, marketing, and sales efforts and investments to result

in sales to many different customers and at prices commensurate with its market

position for these products, and with gaining positive goodwill and reputation for

its products and features, and with additional business opportunities flowing

therefrom due to Kason having an early foothold in the emerging market for its

branded products.

132.   Instead of Kason and its products continuing this trajectory and

achieving these results, Defendants' infringing actions have caused others to

purchase non-Kason products from Defendants instead of Kason products, and

have caused and will continue to cause Kason to suffer irreparable harm including

lost sales, price erosion, loss of goodwill, damage to reputation and lost business opportunities.

133.   Additionally, Defendants, by infringing the Kason Marks and continuing to infringe the Kason Marks, have unfairly gained a foothold in the market Kason has created.  Defendants have displaced Kason from the full foothold Kason should have had among customers in the market by reason of Kason's market-leading development, patenting, trademarking, marketing, and sales efforts.

134.   As a result of Defendants' actions, Kason has or will suffer price erosion, loss of goodwill, damage to reputation, future damages from lost sales of replacement parts and equipment repair, and loss of other business opportunities. As a result, Kason has been and will continue to be irreparably harmed by Defendants' actions.

## COUNT I
### (Trademark Infringement and Counterfeiting – 15 U.S.C. § 1114)

135.   Kason restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

136.   The Kason Marks and the goodwill of the business associated with them in the United States and throughout the world are of great and incalculable value, are highly distinctive, and have become universally associated in the public mind with Kason's products and related services of the very highest quality and reputation finding their source from the Kason.

137.   Defendants have manufactured, imported into the United States, distributed, offered for sale, and/or marketed products to the consuming public using a counterfeit mark and/or in direct competition with Kason's provision of goods under the Kason Marks, in or affecting interstate commerce.  Defendants acted without Kason's authorization or consent, and with knowledge of Kason's well-known and prior rights in the registered Kason Marks.  Despite that knowledge, Defendants' products are intentionally confusingly similar to and/or substantially indistinguishable from, the Kason Marks and, in some cases, bear Kason's name and product number.

138.   Defendants' sales and use of copies or confusingly similar versions of the Kason Marks in conjunction with selling and advertising Defendants' goods is

61

likely to cause, and is causing, confusion, mistake, and deception among the general purchasing public as to the origin of Defendants' goods, and is likely to deceive the public into believing the goods being promoted and sold by Defendants bearing the Kason Marks originate from, are associated with, or are otherwise authorized by Kason, all to the damage and detriment of Kason's reputation, goodwill, and sales.

139.   Defendants' use of the Kason Marks also is likely to cause, and is causing, confusion, mistake, and deception among the restaurant equipment selling community and purchasing public, many of whom are small business owners, as to the origin of related goods bearing the Kason Marks, and is likely to deceive that public into believing that Defendants' products are related goods that originate from, are associated with, or are otherwise authorized by the Kason, all to the damage and detriment of Kason's reputation, goodwill and sales.

140.   Kason has been and will continue to be harmed by Defendants' wrongful conduct.

141.   Defendants' aforesaid acts have irreparably harmed Kason and will continue to irreparably harm Kason unless enjoined by the Court, as a result of which Kason is without adequate remedy at law.

142.    As the direct and proximate result of Defendants' deliberate and intentional infringement, Defendants have been unjustly enriched while Kason continues to suffer injury in an amount not yet ascertained, including future damages from loss of replacement parts and equipment repair.

143.    Kason is entitled to treble damages, attorneys' fees, and/or statutory damages for Defendants' use of counterfeit marks pursuant to 15 U.S.C. §§ 1117(b) and 1117(c).

144.    Kason also is entitled to injunctive relief, as detailed in 15 U.S.C. § 1116, including seizure of goods bearing counterfeit marks under § 116(d).

## COUNT II
## (Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a))

145.    Kason restates and incorporates the averments set forth in the above paragraphs as though fully set forth herein.

146.    The goods bearing the Kason Marks sold and offered for sale by Defendants are of the same nature and type as the goods and services sold and offered for sale by Kason and, as such, Defendants' use is likely to cause confusion to the general purchasing public, and to the restaurant equipment purchasing public.

147.    By misappropriating and using the Kason Marks, including by displaying the registered Kason word marks and registered Kason trade dress on

Defendants' website and product catalogues to offer and sell non-Kason products, Defendants misrepresent and falsely describe to the general public and to the purchasing community the origin and source of the goods bearing the Kason Marks and create a likelihood of confusion by consumers and by the purchasers of products as to the source of such goods and services.

148.   Defendants' actions in using the Kason Marks constitute a false designation of origin, sponsorship, approval, or certification, and a false description or representation of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

149.   Because of Kason's open and widespread use of the Kason Marks in the promotion of Kason's business which competes with Defendants' businesses, and in light of (1) Kason's business relationship with at least Diversified, AllPoints, FMP, Tundra, and KKT for sales of genuine products bearing the Kason Marks; (2) the appearance of the Parallelogram Mark on the non-Kason 0544 Latches sold by FDW Parts and KKT; and (3) notice provided pursuant to 15 U.S.C. § 1111 and actual notice by Defendants, Defendants' use of the Kason Marks is with knowledge and in willful disregard of Kason's rights therein.

150.   Kason has been and will continue to be harmed by Defendants' wrongful conduct.

151.   Defendants' aforesaid acts have irreparably harmed Kason and will continue to irreparably harm Kason unless enjoined by the Court, as a result of which Plaintiff is without adequate remedy at law.

152.   As the direct and proximate result of Defendants' deliberate and intentional infringement, Defendants have been unjustly enriched while Kason continues to suffer injury in an amount not yet ascertained.

153.

## COUNT III
### (Common Law Trademark Infringement)

154.   Kason restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

155.   As a result of Kason's hard work and investments in producing, providing, and promoting its products associated with the Kason Marks, all of which occurred long before Defendants began marketing and selling the products that infringe the Kason Marks, Kason has built up valuable goodwill in the Kason Marks.  As such, the Kason Marks have become associated with Kason's products and services, and have come to symbolize the reputation for quality and excellence of the Kason products and services.

156.   Defendants' unauthorized use of the Kason Marks is being made with Defendants' knowledge of Kason's well-known and prior rights in the Kason Marks.

157.   Defendants' unauthorized use of the Kason Marks is likely to cause confusion or to deceive the consuming public and the purchasers of restaurant equipment, and constitutes trademark infringement under the common law of the State of Georgia, and the laws of the United States.

158.   Defendants' acts constitute willful infringement of Kason's exclusive rights in the Kason Marks, in violation of state common law.

159.   Plaintiff has been and will continue to be harmed by Defendants' wrongful conduct.

160.   Defendants' aforesaid acts have irreparably harmed Kason and will continue to irreparably harm Kason unless enjoined by the Court, as a result of which Kason is without adequate remedy at law.

161.   As the direct and proximate result of Defendants' deliberate and intentional infringement, Kason continues to suffer injury in an amount not yet ascertained.

## COUNT IV
## (Georgia Unfair Competition and Deceptive Trade Practices
## O.C.G.A. § 10-1-372)

162.   Kason restates and incorporates the averments set forth in the above paragraphs as though fully set forth herein.

163.   As a result of Kason's hard work and investments in producing, providing, and promoting its products associated with the Kason Marks, Plaintiff has built up valuable goodwill in the Kason Marks.  As such, the Kason Marks have become associated with the Plaintiff's products and services, and have come to symbolize the reputation for quality and excellence of the Kason products and services.

164.   Defendants, with full knowledge of the Kason Marks and of Kason's prior use of same, intended to and did trade on the goodwill associated with the Kason Marks.

165.   Defendants' acts have misled and continue to mislead and deceive the public as to the source of the goods and services offered by Defendants, permit and accomplish passing off of the goods offered by Defendants as those of Kason's products, and falsely suggest a connection with Kason.

166.   Therefore, Defendants have committed unfair competition and engaged in deceptive trade practices in violation of Georgia law O.C.G.A. § 10-1-372.

167.   Plaintiff has been and will continue to be harmed by Defendants' wrongful conduct.

168.   Defendants' aforesaid acts have irreparably harmed Kason and will continue to irreparably harm Kason unless enjoined by the Court, as a result of which Kason is without adequate remedy at law.

169.   As the direct and proximate result of Defendants' deliberate and intentional infringement, Defendants have been unjustly enriched while Plaintiffs continue to suffer injury in an amount not yet ascertained.

170.   .

## JURY DEMAND

171.   Plaintiffs demand a trial by jury on all disputed issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a judgment in its favor and demands the following relief:

1.   Preliminary and permanent injunctions enjoining Defendants, their successors or assigns, and their officers, directors, partners, agents, subcontractors, servants, employees, attorneys, affiliates, licensees, divisions, subsidiaries and related entities, and all others acting in concert or participation with Defendants, from doing any of the following:

a.   Displaying, marketing, or using any unauthorized copy of the Kason Marks, or any such similar mark, to advertise, promote the sale of, or to identify any product or service offered by Defendants;

b.   Making, in any manner whatsoever, any statement or representation, or performing any act likely to deceive members of the public about the origin of genuine or non-genuine Kason products marketed and sold by Defendants;

2.   A decree ordering an accounting by Defendants to establish all profits realized as a result of the wrongful acts by Defendants set forth in this Complaint, and any other wrongful acts by Defendants to be set forth at trial;

3.   Judgment finding that Defendants have willfully infringed the Kason Marks;

4.   Judgment against Defendants specifically including, but not limited to the following, to the extent allowed by law (including, but not limited to, 15 U.S.C.

§§ 1116(d), 1117, and 1125; 15 U.S.C. §; trademark common law; and O.C.G.A. § 10-1-372):

        a.  actual monetary damages sustained by Plaintiff, or, in the alternative, statutory damages where such are authorized, including but not limited to $200,000 per counterfeit mark per type of good;

        b.  seizure of all counterfeit marks, including the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation;

        c.  profits unlawfully earned by Defendants as a result of the unlawful acts;

        d.  exemplary, punitive, and treble damages where such are authorized by law;

        e.  costs and prejudgment interest;

        f.  attorneys' fees; and

5.    Such other and further relief as the Court deems appropriate and just under the circumstances, including but not limited to Defendants' unjust enrichment as a result of the aforesaid acts.

Dated: March 13, 2018                    Respectfully submitted,

                                         EVERSHEDS SUTHERLAND (US) LLP

                                         /s/ Ann G. Fort

                                         Ann G. Fort
                                         GA Bar No. 269995
                                         Daniel J. Warren
                                         GA Bar No. 738240
                                         Robert R.L. Kohse
                                         GA Bar No. 863748
                                         Walter Freitag
                                         GA Bar No. 510393
                                         999 Peachtree St. NE, Suite 2300
                                         Atlanta, GA 30309
                                         Telephone: (404) 853-8000
                                         Facsimile: (404) 853-8806
                                         annfort@eversheds-sutherland.com
                                         danwarren@eversheds-sutherland.com
                                         robkohse@eversheds-sutherland.com
                                         walterfreitag@eversheds-sutherland.com

                                         *Attorneys for Kason Industries, Inc.*

## **VERIFICATION**

Pursuant to 18 U.S.C. § 1746, I declare under penalty of perjury that the statements of fact in the foregoing Verified Second Amended Complaint are true and correct.

This 13th day of March, 2018.


*/s/ Alexander S. Katz*
President
Kason Industries, Inc.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 13, 2018, a true and correct copy of the foregoing is being filed via ECF, which will cause a copy to be served on all counsel of record.


*/s/ Robert Kohse*
Robert Kohse