**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| KASON INDUSTRIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:17-cv-00026-TCB |
| v. | ) | |
| | ) | |
| ALLPOINTS FOODSERVICE PARTS AND SUPPLIES, LLC, | ) ) | |
| | ) | |
| DIVERSIFIED FOODSERVICE SUPPLY, LLC, | ) ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| D.S.I. PARTS, INC., | ) | |
| | ) | |
| FACTORY DIRECT WORLDWIDE, LLC d/b/a FDW PARTS, | ) ) ) | |
| | ) | |
| FRANKLIN MACHINE PRODUCTS, INC., and | ) ) | |
| | ) | |
| TUNDRA RESTAURANT SUPPLY, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

**<u>VERIFIED THIRD AMENDED COMPLAINT</u>**

## **TABLE OF CONTENTS**

I.     RELEVANT BACKGROUND ............................................................. 1

II.    PARTIES ................................................................................. 8

III.   JURISDICTION AND VENUE ....................................................... 10

IV.   KASON'S INTELLECTUAL PROPERTY RELEVANT
       TO THIS ACTION .................................................................... 15

V.    THIRD PARTY KKT, INC ........................................................... 24

VI.   DEFENDANTS ALLPOINTS, DIVERSIFIED, DSI PARTS,
       FDW PARTS, FMP, AND TUNDRA ............................................. 29

       A.     Background ............................................................ 29

       B.     Diversified's Unlawful Conduct ............................... 29

       C.     AllPoints' Unlawful Conduct .................................... 38

       D.     DSI Parts' Unlawful Conduct ................................... 72

       E.     FDW Parts' Unlawful Conduct ................................. 73

       F.     FMP's Unlawful Conduct ........................................ 75

       G.     Tundra's Unlawful Conduct ..................................... 77

VII.  KASON PROVIDES NOTICE OF REGISTRATION OF ITS
       MARKS, AND DEFENDANTS HAD ACTUAL NOTICE
       THAT KASON'S MARKS WERE REGISTERED .......................... 98

VIII. DEFENDANTS' HARMFUL ACTIONS ADVERSELY
       AFFECT KASON .................................................................... 99

COUNT I (Trademark Counterfeiting and Infringement
     – 15 U.S.C. § 1114) ........................................................ 104

COUNT II (Unfair Competition and False Designation of Origin
     – 15 U.S.C. § 1125(a)) ..................................................... 107

COUNT III (Common Law Trademark Infringement) .............................. 110

COUNT IV  (Georgia Unfair Competition and Deceptive Trade
      Practices  O.C.G.A. § 10-1-372) ....................................................... 112

JURY DEMAND ........................................................................................ 114

PRAYER FOR RELIEF ............................................................................. 114

Pursuant to the Consent Order dated April 5, 2018 (Doc. 59), and the

Court's order dated July 11, 2017 dismissing KKT, Inc. (Doc. 36), Plaintiff Kason

Industries, Inc. ("Kason" or "Plaintiff"), by and through its undersigned counsel,

files this Verified Third Amended Complaint for trademark counterfeiting and

infringement, unfair competition, and related causes of action, against AllPoints

Foodservice Parts and Supplies, LLC, Diversified Foodservice Supply, LLC, D.S.I.

Parts, Inc., Factory Direct Worldwide, LLC d/b/a/ FDW Parts, Franklin Machine

Products, Inc., and Tundra Restaurant Supply, LLC (hereinafter collectively

referred to as "Defendants"), and alleges as follows:

## I.  RELEVANT BACKGROUND

1.     Since the 1920s, Kason has been and continues to be engaged in the

business of developing refrigeration and restaurant equipment hardware in the

United States.

2.     Today, Kason is headquartered in Newnan, Georgia, where its

facilities include over 300,000 square feet of manufacturing plants and offices.

Over the years, Kason has created hundreds of innovative, reliable parts and has

grown in size, sophistication, and reputation to become a leading manufacturer of

commercial refrigeration and restaurant equipment hardware in the United States.

3.     The commercial refrigeration and restaurant equipment hardware

industry into which Kason sells its parts includes at least two types of customers: original equipment manufacturers ("OEMs") and replacement hardware distribution customers.

4.      OEMs purchase and incorporate certain hardware, such as door latches or door hinges, into the final products that they manufacture, such as commercial refrigerators and other restaurant equipment purchased by end-user customers.

5.      Replacement hardware distribution customers sell hardware components, such as individual door latches and door hinges, to equipment owners such as restaurants, or to repair companies, who need to replace the original hardware.  Defendants have been wholesale distributors of Kason products for many years.

6.      Supplying its hardware to replace parts on finished foodservice equipment parts, such as ice machines, walk-in refrigerators, and hot side heat-and-hold cabinets and dough proofers, is a major source of revenue for Kason and for other market participants.  Kason sells its hardware to OEMs at a reduced margin, because even high quality mounting parts like hinges and latches eventually wear out.  Replacement parts can be sold at higher prices that yield higher margins,

because stocking and delivering those parts, including parts on an individual or low-quantity basis, requires more attention from Kason's staff.

7.     Institutional customers, such as restaurant chains, will sometimes source replacement parts in bulk.  Others will buy from Kason indirectly by placing orders through Kason's distributors.

8.     The replacements parts market is big business.  Interrupting this supply chain by selling non-Kason parts to replace hardware that was originally supplied by Kason diverts Kason's expected profits to the supplier of the alternate replacement part.  Distributors can also earn a larger profit margin if they can buy the non-Kason part at a lower price.  These profits can tempt competitors and distributors to cut corners to reduce the cost of each part, and sometimes to compete unfairly and unlawfully.

9.     Defendants and other participants in this market recognize the value of the Kason brand, and the high quality of Kason's parts.  In general, Kason offers a one-year warranty on its parts, which is one of the longest warranties in the foodservice hardware industry.  Kason obtains all relevant sanitary and safety certifications for its parts, including NSF and UL certifications, required for use in the foodservice industry.  Kason also enforces quality control processes to ensure its parts meet Kason's high standards prior to customer delivery.

10.     Kason has intellectual property rights in its brand name (KASON®) and logos, in certain part designs, in certain product names, and in the part numbers that Kason has used consistently for decades.  Kason has used the intellectual property protection tools provided by federal and state laws to maintain its unique market identity.

11.     In a market that has become increasingly electronic and Internet-based, sellers similar to Defendants use well-known brands on their websites to captures searches by purchasers who are searching for brand name parts, like Kason's parts.

12.     For years, Defendants have used Kason's brand to increase their own sales.  Defendants display Kason's registered trademark logo on their websites, identifying Kason as a "REPRESENTED MANUFACTURER," and one of their "STRATEGIC SUPPLIERS."  Defendant Tundra Restaurant Supply goes even further, featuring Kason and its parts on its website, acknowledging that "KASON IS ONE OF THE LEADING MANUFACTURERS OF REFRIGERATION PARTS AND HARDWARE IN THE COMMERCIAL KITCHEN INDUSTRY:"

4



13.     Kason does permit its distributors to use its trademarks to sell Kason's products.  But Kason also has taken steps to control those uses and its other intellectual property rights over the years, because Kason has the right to control how its parts and the company as a whole are perceived by the purchasers in this market.

14.     Those enforcement steps include requesting others to stop certain unfair or unlawful marketing practices, and requiring its authorized distributors to

respect Kason's intellectual property while they market Kason's parts.  At times, and when necessary, Kason has filed lawsuits to protect its rights.

15.    Kason has identified several unfair and deceptive marketing practices on Defendants' websites that are harming Kason, and asked Diversified and its subsidiaries to stop them.  Diversified has, at times, paid lip service to Kason's requests.  But, these practices continue, making this legal action necessary to maintain Kason's control over its intellectual property and brand recognition.

16.    The unfair and deceptive practices used by Defendants include at least the following:

       a.  Advertising and selling unauthorized, counterfeit copies of Kason's parts that are protected by registered trademarks;

       b.  Reverse passing off, by substituting Defendants' name or part number for Kason's brand name and part number in advertisements, implying that Defendants are the suppliers of the part, not Kason.  In some instances, Defendants' advertisements create further confusion regarding the source of the part by also:

          i.  Displaying a photograph of a Kason part;

         ii.  Using Kason's registered trademark-protected name;

iii.   Using Kason's unique part number(s) for the part being advertised; and/or

iv.   Identifying both Kason and Kason's competitors, such as Component Hardware Group ("CHG") and Standard Keil, which creates additional confusion regarding the true source of the advertised part.

17.    Defendants' unfair and deceptive advertisements are not isolated mistakes.  They are evidence of a business plan that aims to leverage Kason's goodwill in the marketplace not to sell Kason's parts, but to sell parts supplied by Kason's competitors, or unlabeled and unauthorized copies of Kason's parts. Defendants developed this business plan while they enjoyed the benefits of being a Master Distributor of Kason's parts.  As a Master Distributor, Defendants paid the lowest wholesale prices Kason offers, and received favorable credit terms, because they were supposed to be working with Kason to build their mutual businesses. During that time, Defendants also received preferential service, including broken box pricing, and storage for inventories of products for drop-shipping.  Instead, it has become clear that Defendants took everything they know about Kason's parts and used that knowledge to compete against Kason unfairly, deceptively, and unlawfully.

18.     The unfair and deceptive marketing practices that Kason seeks to end are detailed below.  Kason has found these practices in over one hundred advertisements found on Defendants' websites.  Because these advertisements are electronic, they are readily altered, either to duplicate the unfair and deceptive practices, or to correct them.  Accordingly, in addition to all available monetary damages and compensation, Kason seeks an injunction (1) requiring the correction of the specified advertisements, and of any other advertisements controlled by these Defendants that use the unfair and deceptive tactics and practices; and (2) prohibiting the adoption of such tactics and practices in the future.

19.     To the extent that paper catalogs, brochures, and other marketing materials also incorporate these unfair and deceptive marketing tactics, Defendants should be enjoined from (1) further distribution of those paper materials; and (2) using these unfair and deceptive marketing tactics in any future paper catalogs, brochures, or other marketing materials.

## II. <u>PARTIES</u>

20.     Kason is a Georgia corporation, with its principal place of business at 57 Amlajack Boulevard, Newnan, Georgia 30265.

21.     On information and belief, AllPoints Foodservice Parts and Supplies, LLC d/b/a AllPoints Holdings Inc. ("AllPoints") is a Delaware company, with its

principal place of business at 607 West Dempster Street, Mount Prospect, Illinois 60056.  AllPoints can be served through its registered agent, CT Corporation System, at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

22.    On information and belief, Diversified Foodservice Supply, LLC ("Diversified") is a Delaware limited liability company, with its principal place of business at 607 West Dempster Street, Mount Prospect, Illinois 60056.  Diversified can be served through its registered agent, The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

23.    On information and belief, D.S.I. Parts, Inc. ("DSI Parts") is an Ohio corporation, with its principal place of business at 234 Hiawatha Trail, Springboro, Ohio 45066.  DSI Parts can be served through its registered agent, CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

24.    On information and belief, Factory Direct Worldwide, LLC d/b/a FDW Parts ("FDW Parts") is an Illinois limited liability company with its principal place of business at 230 Messner Drive, Wheeling, Illinois 60090.  FDW Parts can be served through its registered agent, CT Corporation System, at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

25.    On information and belief, Franklin Machine Products, Inc. ("FMP") is a New Jersey corporation with its principal place of business at 101 Mount Holly

Bypass, Lumberton, New Jersey 08048.  FMP can be served through its registered

agent, The Corporation Trust Company, 820 Bear Tavern Road, West Trenton,

New Jersey 08628.

26.     On information and belief, Tundra Restaurant Supply, LLC

("Tundra") is a Delaware limited liability company, with its principal place of

business at 607 West Dempster Street, Mount Prospect, Illinois 60056.  Tundra can

be served through its registered agent, The Corporation Trust Company, at

Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## III.  <u>JURISDICTION AND VENUE</u>

27.     This is an action for, *inter alia*, trademark counterfeiting and

infringement, false designation of origin, unfair competition, and related claims

pursuant to 15 U.S.C. §§ 1 *et seq.*, including §§ 1114, 1125(a), and for related

claims of unfair competition under the laws of the State of Georgia.

28.     This Court has subject matter jurisdiction over this action pursuant to

15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b).

This Court has supplemental jurisdiction over Plaintiff's additional claims,

pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's

federal trademark infringement and counterfeiting claims, over which this Court

has original jurisdiction, that the additional claims form part of the same case or controversy under Article III of the United States Constitution.

29.    This Court has personal jurisdiction over AllPoints, because AllPoints operates a fully-interactive website, www.allpointsfps.com, which allows consumers and businesses residing in Georgia to place orders and purchase the infringing parts at issue in this action.  As a result of that website, on information and belief, AllPoints sells, ships, and has sold and shipped infringing parts and other parts to Georgia residents located within the State of Georgia, and derives substantial revenue from Georgia residents.  AllPoints also purchases parts from Kason.  Pursuant to at least O.C.G.A. § 9-10-91(1), this Court has specific personal jurisdiction over Allpoints for the causes of action set forth herein.

30.    This Court has personal jurisdiction over Diversified, because, on information and belief, Diversified has conducted business within this judicial district, and derives substantial revenue from Georgia residents.  Further on information and belief, Diversified has sold and shipped the infringing parts at issue in this action into this district.  For example, on its website, www.dfsupply.com, Diversified indicates that it is "[h]ighly diversified, with over 53,000 unique customers. ~250,000 locations serviced and an average order size of ~$200. . . Broad geographic reach with seven distribution facilities and same day

shipping." Diversified also purchases parts from Kason. Pursuant to at least O.C.G.A. § 9-10-91(1), this Court has specific personal jurisdiction over Diversified for the causes of action set forth herein.

31.     This Court has personal jurisdiction over DSI Parts, because DSI operates a fully-interactive website, http://dsiparts.com, which allows consumers and residents in Georgia to place orders and purchase at least some of the infringing products at issue in this action. As a result of that website, on information and belief, DSI sells, ships, and has sold and shipped infringing products and other products to Georgia residents located within the State of Georgia, and derives substantial revenue from Georgia residents. Pursuant to O.C.G.A. § 9-10-91(1), this Court has specific personal jurisdiction over DSI Parts for the causes of action set forth herein.

32.     This Court has personal jurisdiction over FDW Parts. On information and belief, FDW Parts has sold and shipped products into this district, and derives substantial revenue from Georgia residents. Further on information and belief, FDW Parts has sold and shipped the infringing products at issue in this action into this district. FDW Parts also operates a website, www.fdwparts.com, which is available to and accessible by Georgia residents to view FDW Parts' products. Pursuant to O.C.G.A. § 9-10-91(1), this Court has specific personal jurisdiction

over FDW Parts, because Georgia customers can obtain information and, on information and belief, purchase FDW Parts' products via its website.  On information and belief, FDW Parts ships has sold and shipped infringing products and other products to Georgia residents located within the State of Georgia.

33.     This Court has personal jurisdiction over FMP, because FMP operates a fully-interactive website, www.fmponline.com/ecomm/Shop, which allows residents and consumers in Georgia to place orders and purchase the infringing products at issue in this action.  As a result of that website, on information and belief, FMP ships and has shipped infringing products and other products to Georgia residents located within the State of Georgia, and derives substantial revenue from Georgia residents.  Pursuant to O.C.G.A. § 9-10-91(1), this Court has specific personal jurisdiction over FMP for the causes of action set forth herein.

34.     This Court has personal jurisdiction over Tundra, because Tundra operates a fully-interactive website, www.etundra.com, which allows consumers and businesses residing in Georgia to place orders and purchase infringing parts at issue in this action.  As a result of that website, on information and belief, Tundra ships and has shipped infringing parts and other parts to Georgia residents located within the State of Georgia, and derives substantial revenue from Georgia residents.  Tundra also purchases parts from Kason.  Pursuant to at least O.C.G.A.

§ 9-10-91(1), this Court has specific personal jurisdiction over Tundra for the causes of action set forth herein.

35.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), because a substantial part of the events and injury giving rise to Kason's claims has occurred and continues to occur in this district.

## IV.    <u>KASON'S INTELLECTUAL PROPERTY RELEVANT TO THIS ACTION</u>

36.    In 1963, the United States Patent and Trademark Office awarded Kason Trademark Registration Nos. 744,632 (the "'632 Mark") and 744,763 (the "'763 Mark") for the word "KASON," noting Kason's long use of the KASON mark in connection with refrigeration and restaurant equipment hardware as far back as "about 1928."

37.    In around 1957, Kason began selling a latch for use in commercial refrigeration and restaurant equipment, which has been designated with the Kason part number "0533" (the "Kason 0533 Latch").  A photograph of the Kason 0533 Latch, as currently offered by Kason, is shown below:



0533D EDGEMOUNT MECHANICAL LATCH

38.    The United States Patent & Trademark Office has recognized the distinctive appearance of the Kason 0533 Latch as a trademark belonging exclusively to Kason.  As such, Kason owns U.S. Trademark Registration No. 2,590,113 (the "'113 Mark"), for the appearance of the Kason 0533 Latch:



Image from U.S. Trademark Registration No. 2,590,113

39.    In 1992, the United States Patent and Trademark Office awarded Kason Trademark Registration No. 1,717,452 (the "'452 Mark") for the following stylized Kason name, sometimes known as the "Kason Parallelogram" Mark:



40.    In 1997, Kason began selling another latch for similar use in commercial refrigeration and restaurant equipment, which is designated with the

Kason part number "0544" (the "Kason 0544 Latch").  A photograph of the Kason

0544 Latch, as currently offered by Kason, is shown below:



41.    The United States Patent & Trademark Office has recognized the

distinctive appearance of the Kason 0544 Latch as a trademark belonging

exclusively to Kason.  As such, Kason owns U.S. Trademark Registration No.

4,906,919 (the "'919 Mark"), for the appearance of the Kason 0544 Latch:



Image from U.S. Trademark Registration No. 4,906,919

17

42.     The United States Patent & Trademark Office has also recognized the ornamental design of the Kason 0544 Latch, and awarded Kason U.S. Design Patent No. D391,141 (the "Kason Patent"), as shown below:



Image from U.S. Design Patent No. D391,141

43.     By virtue of the issuance of the Kason Patent, as of at least the issue date, the design claimed by the Kason Patent (the same design as embodied in the '919 Mark) was deemed unique, and non-functional.  A true and correct copy of the Kason Patent is attached hereto as Exhibit 1.

44.     Over the years, and in recognition of the distinctive appearance of Kason's parts, the United States Patent and Trademark Office awarded numerous additional trademark registrations to Kason.

45.     Relevant to this action, the trademark registrations awarded to Kason include:

| Trademark Registration No. | Text or Image |
|---|---|
| U.S. Trademark Reg. No. 744,632 for the word "KASON" | KASON |

18

| Trademark Registration No. | Text or Image |
|---|---|
| U.S. Trademark Reg. No. 744,763 for the word "KASON" | KASON |
| U.S. Trademark Reg. No. 1,717,452 for the Kason Parallelogram Mark |  |
| U.S. Trademark Reg. No. 2,590,113 for the appearance of the Kason 0533 latch |  |
| U.S. Trademark Reg. No. 4,906,919 for the appearance of the Kason 0544 latch |  |
| U.S. Trademark Reg. No. 2,319,965 for the appearance of the Kason No. 0171 latch |  |
| U.S. Trademark Reg. No. 2,181,603 for the appearance of Kason's No. 56 family of latches |  |
| U.S. Trademark Reg. No. 2,227,009 for the appearance of Kason's No. 58 family of latches |  |

| Trademark Registration No. | Text or Image |
|---|---|
| U.S. Trademark Reg. No. 2,166,710 for the appearance of Kason's No. 1229 family of handles |  |
| U.S. Trademark Reg. No. 2,349,251 for the appearance of the Kason No. 0215 hinges |  |
| U.S. Trademark Reg. No. 2,437,925 for the appearance of the Kason No. 0217 and 0218 hinges |  |
| U.S. Trademark Reg. No. 2,374,415 for the appearance of the Kason No. 0212 and 0214 hinges |  |

| Trademark Registration No. | Text or Image |
|---|---|
|  |  |
| U.S. Trademark Reg. No. 2,136,434 for the appearance of Kason's No. 1256 family of hinges |  |
| U.S. Trademark Reg. No. 2,176,043 for the appearance of Kason's No. 1245 family of hinges |  |
| U.S. Trademark Reg. No. 2,177,708 for the appearance of the Kason Nos. 1255 and 1256 hinges |  |
| U.S. Trademark Reg. No. 2,415,066 for the appearance of Kason's No. 1249 family of hinges |  |

| Trademark Registration No. | Text or Image |
|---|---|
| U.S. Trademark Reg. No. 2,415,070 for the appearance of Kason's No. 1248 family of hinges |  |
| U.S. Trademark Reg. No. 3,212,100 for the appearance of Kason's No. 1094 family of door closers |  |
| U.S. Trademark Reg. No. 4,906,918 for the appearance of Kason's No. 1095 family of door closers |  |

46.    True and correct copies of the trademark registration certificates for the above marks (collectively, the "Kason Marks") are attached hereto as Exhibit 2.

47.    Pursuant to 15 U.S.C. § 1111, Kason provided notice and Diversified was aware that the Kason Marks are registered, because Kason includes the "®" in its part catalogs.  Since at least 2006, Kason's catalogs have included the "®" next to parts protected by registered trademarks.  For example, Diversified has been in possession of a Kason catalog, dated 2006, which shows the "®" next to parts at issue in this action.  (Exhibit 3).  Additional, and more recent, Kason catalogs also include the "®" next to parts protected by registered trademarks.

## V.  <u>THIRD PARTY KKT, INC</u>

48.    KKT, Inc. d/b/a Lockwood Manufacturing Company ("KKT") is a
seller of, *inter alia*, food service equipment, such as storage and display cabinets.
(*See* www.lockwoodusa.com.)

49.    From about May 2010 and until about June 10, 2014, KKT purchased
from Kason the Kason 0544 latches for use with and mounting to KKT's food
service equipment.

50.    During the February 9-11, 2017 National Association of Food
Equipment Manufacturers show ("NAFEM") in Orlando, Florida, KKT displayed a
number of cabinets and other equipment in KKT's display booth, as shown below:

 

(Exhibit 4).

51.    Latches that appeared to be Kason 0544 latches were mounted to these KKT cabinets.  These latches incorporated into the KKT cabinets were virtually identical in appearance to the Kason 0544 latches, and were mounted in the same manner and location to the KKT cabinets as the Kason 0544 latches, but were, in fact, unauthorized copies of the Kason 0544 latch.

52.    KKT also sells those latches via third-party websites, such as www.ACityDiscount.com, as depicted below:



(Excerpt from Exhibit 5) (red circles added).

53.    Kason purchased the KKT latches from another third-party reseller, Heritage Parts.  The KKT latches from Heritage Parts are advertised as having "Manufacturer Part #: HAN-CA."  (Exhibit 6).  Those "Han-Ca" latches sold by KKT are virtually identical in appearance to the Kason 0544 latch:





(Exhibit 7).

54.    But KKT's Han-Ca latch does not include the Kason Parallelogram

Mark or the part number on the bottom of the metal latch body:



(Exhibit 8)(annotations and red circles added).

55.    Upon closer inspection, however, Kason discovered unique markings

*inside* of KKT's molded plastic handle.  For example, KKT's product is stamped

with Kason's '452 Mark and Kason's part number:



(Exhibit 9).

56.     KKT's latches are virtually identical to the Kason '919 Mark and also include the Kason '452 Mark:

| Kason Marks | KKT's Infringing Product |
|---|---|
|  (The '919 Mark) | |
| (The '452 Mark) | |

57.     KKT was making, using, offering for sale, selling, and/or importing into the United States, the Han-Ca Latch, without Kason's permission.

58.     Kason and KKT are both direct and indirect competitors in the commercial restaurant equipment industry, for at least sales of latches.

## VI.  DEFENDANTS ALLPOINTS, DIVERSIFIED, DSI PARTS, FDW PARTS, FMP, AND TUNDRA

### A. Background

59.     On information and belief, Defendants AllPoints, DSI Parts, FDW Parts, FMP, and Tundra are commonly owned by Defendant Diversified. Diversified created AllPoints in around 2008, after consolidating other restaurant replacement parts companies.  Diversified then began acquiring other companies in the restaurant equipment replacement parts industry, including Tundra in 2010, FDW Parts, FMP in 2012, and DSI Parts in 2015.  *See* dfsupply.com/our-history/.

60.     Defendants are in the replacement hardware distribution business, and each sells restaurant equipment parts from different suppliers, including by way of their individual websites:  www.allpointsfps.com, www.dfsupply.com, www.dsiparts.com, www.fdwparts.com, www.fmponline.com/ecomm/Shop, and www.etundra.com.

61.     Kason has sold replacement parts to AllPoints, Diversified, DSI Parts, FMP, and Tundra, and those distributors sell Kason parts and other parts to the consuming public.

### B. Diversified's Unlawful Conduct

62.     Defendant Diversified markets restaurant equipment parts under the name "Original Parts."  Those Original Parts products are offered through a

29

website located at www.OriginalParts.com.  According to that website, "Original

Parts is owned by Diversified Foodservice Supply Inc.," and orders are fulfilled

through Defendants AllPoints and Tundra.  (Exhibit 10).

63.     Diversified has adopted a uniform look-and-feel for marketing the

various replacement parts via its website.  That marketing is through a brown and

white "ORIGINAL PARTS" logo at the top of each part page, and use of the

"Original Parts" name throughout that website.  For example, the following door

spring part is displayed with the "ORIGINAL PARTS" logo at the top of the

webpage:



64.    Although the name "Original Parts" sounds generic, Diversified attempts to use the name as a source-identifier.  For many of the "Original Parts" part offerings, Diversified includes a listing of "OEM EQUIVALENT" part suppliers and part numbers.

65.    The Original Parts website purports to be "the smart choice in sourcing parts."  That website explains the theory behind the "Original Parts" parts:

> You could buy an OEM part from an OEM distributor and pay for the extra step of distribution and the OEM stamp and of course, it would be a good choice. Or you choose <u>an Original Part, which is in most cases, the same exact part, built to the same specification, just without the OEM branding</u>.

(Exhibit 11) (emphasis added).

66.    Diversified's Original Parts website creates confusion in the marketplace by marketing parts as "Original Parts," but also leading customers to believe that the parts are genuine Kason parts.  One such example is the "Original Parts" no. 22-1119, shown below:



✉ CONTACT US   866-928-0189

THE PARTS       NEWS & EVENTS

HOME   >   THE PARTS   >   HOT SIDE   >   HARDWARE   >   LATCH

LATCH



### LATCH

OCM #: 22-1119

MAGNETIC LATCH AND STRIKE W/ RETRO FIT
HARWARE TO REPLACE
OLD STYLE PUSH BUTTON LATCH.
11-1/2" OD, 4-3/16" MT. CTRS.
KASON SERIES 171-04
CRES-COR FOOD WARMERS
WARMER
H133UA-9,H-137U, H-138-CCD-1834, H-138-
KFC-68.
SERIES: H-339-(124,127,128,128-3,135-
BK,188,188-3,
188-PT,1813,UA-8).

+ WHERE TO BUY

OEM EQUIVALENT

### OEM EQUIVALENT

SPECIFICATIONS

CRESCOR 1006-108-K1, CRESCOR 1006 108 K1, CRESCOR 1006-084, CRESCOR 1006-
086, CRESCOR 1006-086-1, CRESCOR 1006-092, CRESCOR 1006-099-01, CRESCOR
1006-099-1, CRESCOR 1006-100-1, CRESCOR 1006-112, CRESC

3:26:33 PM 12/1/2017

(Exhibit 12) (red circles added).

67.     At minimum, Diversified is "reverse passing off" Kason's parts.

Reverse passing off occurs when a defendant "misrepresents [the plaintiff's] goods

or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539

U.S. 23, 27 n.1 (2003).  Diversified has and continues to use the "Original Parts"

name in an effort to replace the Kason name when offering and selling what appear

to be genuine Kason parts.

68.     The advertisement for that OCM #: 22-1119 latch uses the

"ORIGINAL PARTS" logo in an attempt to indicate – falsely – the origin of the

part, which is labeled as a generic "LATCH."  The photograph in that offering is of

a Kason 171 latch, the appearance of which is protected by U.S. Trademark Reg.

No. 2,319,965, and the statement "KASON SERIES 171-04" uses Kason's

registered wordmark and Kason's unique part number.  Further, the offering

includes the confusing description that this part is "TO REPLACE" the "KASON

SERIES 171" latch.  Diversified's offering is an attempt to confuse and mislead

the consuming public about whether or not the part is a genuine Kason part.

69.     Furthermore, another one of the products misleadingly and

confusingly offered on OriginalParts.com as a "Kason" part infringes certain

Kason Marks:

| **Kason Marks** | **"Original Parts"** |
|---|---|
| The '251 Mark: <br><br><br><br><br><br><br><br><br> The '632 and '763 word marks for "KASON" |  <br> (Exhibit 13) (red circle added) |

70.    Clicking the "+WHERE TO BUY" button on the webpage of the above-noted product reveals contact information for AllPoints and/or Tundra, evidencing that those Defendants are the sellers of the infringing products:



(Exhibit 14).

71.    As detailed herein, AllPoints and Tundra do not or did not sell the genuine Kason 0215 hinge product, but instead sell or have sold unauthorized copies of the Kason product.  Therefore, Diversified is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

72.    The Original Parts website includes multiple examples of misleading and confusing part offerings that rely on Kason's name, registered trade dress, and/or Kason's part numbers.  Examples of those misleading and confusing

offerings include Original Parts nos. 22-1119, 26-1578, 26-1904, 26-2437, 26-3003, 26-3244, 26-3381, 26-4458, 26-5757, 26-1120, 28-1137, 36200, the website offerings of which are attached as Exhibit 15. Thus, Diversified has been marketing and/or selling, and continues to market and/or sell, parts which falsely designate the origin of Kason's genuine parts, or misrepresent the true origin of the part.  That activity by Diversified was and is likely to cause consumer confusion, because consumers are confused as to the true origin of those parts.

73.     Furthermore, the statement on the Original Parts website that "an Original Part, which is in most cases, the same exact part, built to the same specification, just without the OEM branding," indicates that Diversified is manufacturing or has manufactured unauthorized copies of Kason parts, including (a) parts for which the appearance is protected by a registered trademark; and (b) parts advertised by Diversified as a "KASON" part.

74.     Kason has been harmed by Diversified's actions.

## C. **AllPoints' Unlawful Conduct**

75.    Through its website, AllPoints markets and sells restaurant equipment replacement parts, including refrigeration parts.  Some of the parts offered and sold by AllPoints are genuine Kason parts.

76.    But, upon further inspection by Kason, AllPoints confusingly and misleadingly markets and sells parts which might or might not be genuine Kason parts, as detailed below.

77.    For example, AllPoints offers and sells part number 26-6176, the "Cover, Hinge (Kason 215)," as shown below:



(Exhibit 16).

78.    Although use of the name "Kason" in the product title seems to indicate it is a Kason product, the product actually sold by AllPoints is a copy of the genuine trademark-protected Kason product.

79.    This hinge product sold by AllPoints as part number 26-6176 is an unauthorized copy of the Kason 0215 hinge, evidenced by the fact that the back of the AllPoints' product does not bear the "Kason" trademark, like the genuine Kason product does, as shown below:

| Kason's Genuine 0215 Hinge (back view) | AllPoints' "Cover, Hinge (Kason 0215)" (back view) |
|---|---|
| <br>(Exhibit 17) (red circles added) | (Exhibit 18) |

80.     The appearance of the Kason 0215 Hinge product is protected by the

'251 Mark.  As a result, by copying, marketing, and selling unauthorized copies of

the Kason product, AllPoints infringes the '251 Mark:

| Kason's '251 Mark | AllPoints' "Cover, Hinge (Kason 215)" |
|---|---|
|  | |
| | (Exhibit 19) |

81.     Therefore, AllPoints is in violation of 15 U.S.C. §§ 1114(1)(a), (b)

and 1125(a).

82.     By way of another example, on its website, AllPoints offers part number 22-1078 "Handle with Strike," but does not identify the source of that product, as shown below:



(Exhibit 20).

83.     On information and belief, the above photograph of the "Handle with Strike" is actually a photograph of a Kason Product No. 0533 latch, the appearance of which is protected by the Kason Mark '113 Mark.

84.     That depiction of the "Handle with Strike," without identifying whether or not it is a genuine Kason product, creates confusion in the marketplace, because the consumer cannot determine whether or not AllPoints offers a genuine Kason product.

85.     And, in fact, despite its depiction of Kason's trademarked Product No.

0533 latch, AllPoints does not deliver a genuine Kason product when a customer

orders part number 22-1078 "Handle with Strike."  Instead, AllPoints actually

delivers the product of Kason's competitor, Component Hardware Group

("CHG"):

| Product on the AllPoints Website (Kason product depicted) | Product actually delivered (Component Hardware Group product) |
|---|---|
|  | |

(*Id.*)

(Exhibit 21)

86.     As a result, AllPoints causes consumer confusion by depicting

Kason's well-known, trademarked 0533 latch, but actually delivering a different

product.  Kason has lost sales as a result of AllPoints' misleading sales tactics.

Therefore, AllPoints is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

87.   Further confusing the consumer, the AllPoints website also indicates that the 22-1078 "Handle with Strike" part "Replaces the following Manufacturer's Products," and lists various product numbers and also a product number of Kason's competitor, CHG:



(Exhibit 20) (red circle added).

88.   Therefore, AllPoints is in violation of 15 U.S.C. § 1125(a).

89.     By way of another example, on its website, AllPoints offers part number 22-1096, "Latch with Strike," but does not identify the source of that product, as shown below:



(Exhibit 22).

90.     On information and belief, the above photograph of the "Latch with Strike" is actually a photograph of a Kason Product No. 0171 latch, the appearance of which is long-recognized by consumers and protected by the '965 Mark.

91.     AllPoints' depiction of the "Latch with Strike," without identifying whether or not it is a genuine Kason product, creates confusion in the marketplace, because the consumer cannot determine whether or not AllPoints offers a genuine Kason product.

92.     Further confusing the consumer, the AllPoints website for that product

references a Kason product number and also a product number of Kason's

competitor, CHG:



(*Id*.) (red circles added).

93.     And, in fact, despite its depiction of Kason's trademarked Product No.

0171 latch, AllPoints does not deliver a genuine Kason product when a customer

orders part number 22-1096 "Latch with Strike."  Instead, AllPoints actually

delivers the product of Kason's competitor, CHG:

| Product on the AllPoints Website (Kason product depicted) | Product Actually Delivered (Component Hardware Group product) |
|---|---|
|  | |

94.     As a result, AllPoints causes consumer confusion by depicting

Kason's well-known, trademarked 0171 latch, but delivering a different product.

Kason has lost sales as a result of AllPoints' misleading sales tactics.  Therefore,

AllPoints is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

95.    By way of another example, on its website, AllPoints offers part number 26-1584, "Hinge," but does not identify the source of that product, as shown below:



(Exhibit 24).

96.    On information and belief, the above photograph of the "Hinge" is actually a photograph of a Kason Product No. 0217 hinge, the appearance of which is protected by the '925 Mark.

97.    AllPoints' depiction of the "Hinge," without identifying whether or not it is a genuine Kason product, creates confusion in the marketplace, because the consumer cannot determine whether or not AllPoints offers a genuine Kason product.

98.     Further confusing the consumer, the AllPoints website for that

"Hinge" product references a Kason product number, and also a product number of

Kason's competitor, CHG:



(*Id.*) (red circles added).

99.    And, in fact, despite its depiction of Kason's trademarked Product No.

0217 hinge, AllPoints does not deliver a genuine Kason product when a customer

orders part number 26-1584 "Hinge."  Instead, AllPoints actually delivers the

product of Kason's competitor, CHG:

| Product on the AllPoints Website (Kason product depicted) | Product actually delivered by AllPoints (Component Hardware Group product) |
|---|---|
|  (*Id.*) | (Exhibit 25) |

100.   As a result, AllPoints causes consumer confusion by depicting

Kason's well-known, trademarked 0217 hinge, but actually delivering a different

product.  Kason has lost sales as a result of AllPoints' misleading sales tactics.

Therefore, AllPoints is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

101.   By way of another example, on information and belief, AllPoints sells

an unauthorized copy of Kason's 215 hinge, the appearance of which is protected

by U.S. Trademark Registration No. 2,349,251:



(Exhibit 26).

102.   By way of another example, AllPoints is also "reverse passing off"

parts that appear to be genuine Kason parts by advertising and selling parts using

the name "Original Parts."  AllPoints is using the "Original Parts" name as a

confusing marketing tool to misrepresent, as its own or as Diversified's, what

appear to be Kason's parts.  AllPoints advertises parts under the "Original Parts"

brand, while removing or otherwise obscuring the Kason name from that

advertised part:



(Exhibit 27) (red circles added).

103.   The part pictured above is Kason's 171 latch, the appearance of which is protected by U.S. Trademark Reg. No. 2,319,965.  Also as shown above, AllPoints part no. 22-1119 is confusingly labeled "op LATCH" where presumably "op" stands for "Original Parts" and the "Original Parts" logo is used in an attempt to denote – falsely – the origin of the displayed part, which is *Kason's* 171 latch. Further, AllPoints includes the confusing description that this part is "TO REPLACE" the "KASON SERIES 171" latch.  That advertising by AllPoints is an attempt to confuse and mislead the consuming public about the origin of the part. And if an unauthorized copy of Kason's trademark-protected latch is delivered, AllPoints would be liable for trademark counterfeiting as well.

104.   AllPoints also confusingly advertises parts using a generic name and its own part number, but then refers to the "KASON" wordmark, registered Kason trade dress, and/or a Kason part number in the part description.  This practice has been considered trademark infringement and/or unfair competition for decades. *See, e.g., Syntex (U.S.A.), Inc. v. Interpharm, Inc.*, No. 1:92-cv-03, 1993 WL 643372, at *6 (N.D. Ga. Mar. 19, 1993) (Ward, J.) ("plaintiffs are substantially likely to prevail on their claim that defendants' current usage of plaintiffs' trademarks in their advertisements constitutes trademark infringement and common law unfair competition, as defendants' advertising is not only false, it is

confusing as to the source of the part the customer is ordering . . . and defendants fail to inform customers that the parts they are ordering are not the prominent brand name parts, but the generic versions").

105.   Kason's part numbers are significant in the mind of the consumer to connect the part offered with Kason as the source of the part.  The reason AllPoints uses Kason's part numbers in its advertising is to represent, sometimes falsely, that a part is supplied by Kason.

106.   Kason has spent hundreds of thousands of dollars advertising its parts and using the part numbers in those advertisements, such as through part catalogs that are distributed to customers throughout the United States, and in responses to requests for quotation.  Additionally, Kason's part numbers, including the ones referred to by AllPoints in its advertisements, have been in use for many years, sometimes decades.  Indeed, the only reason AllPoints references Kason's part numbers in its advertisements is to indicate a connection, whether or not such connection is false, with Kason.

107.   Additionally, AllPoints confusingly markets parts by stating that a part "replaces" a Kason part.  Advertising that a non-Kason part "replaces" a Kason part is false and also creates a likelihood of confusion, prohibited by the Lanham Act.  *Anton/Bauer, Inc. v. Energex Sys. Corp.*, 839 F. Supp. 243, 245

(S.D.N.Y. 1993) ("misleading statements concerning part similarity or compatibility are prohibited by both trademark law and numerous antideception provisions including § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)").  That representation is misleading because it is unclear whether "replaces" means that the part is actually a genuine Kason part or a part by another manufacturer.  That representation also is false because it implies that a non-Kason "replacement" adheres to the same manufacturing and quality control standards as genuine Kason parts.

108.   Specific examples of parts that AllPoints advertises on its website using the aforementioned misleading and confusing tactics are:

   a.   AllPoints No. 12-1110 for "LATCH & STRIKE" displays the "KASON" wordmark and a Kason part number.

   b.   AllPoints No. 22-1078 for "HANDLE WITH STRIKE" displays a competitor's part, but references a Kason part number: 533D.

   c.   AllPoints No. 22-1093 for "LATCH WITH STRIKE" purports to show a Kason part, displays the "KASON" wordmark and part number, but also references a competitor, Component Hardware Group ("CHG").

    d.  AllPoints No. 22-1094 for "op LATCH WITH STRIKE" uses the "Original Parts" name with the "KASON" wordmark.

    e.  AllPoints No. 22-1095 for "LATCH WITH STRIKE" purports to show a Kason part and displays the "KASON" wordmark and part number, but also refers to a part offered by Kason's competitor, CHG.

    f.  AllPoints No. 22-1119 for "op LATCH" uses the "Original Parts" name, but also purports to show a Kason 171 latch, the appearance of which is protected by U.S. Trademark Reg. No. 2,319,965, and displays the "KASON" wordmark and part number.

    g.  AllPoints No. 22-1155 for "LATCH" purports to show a Kason 58 latch, the appearance of which is protected by U.S. Trademark Reg. No. 2,227,009, and displays the "KASON" wordmark and part number.

    h.  AllPoints No. 22-1456 for "op DOOR LATCH" uses the "Original Parts" name, but also displays the "KASON" wordmark and part number.

i.   AllPoints No. 22-1545 for "HANDLE, RELEASE - 6" displays the "KASON" wordmark and part numbers.

j.   AllPoints No. 26-1570 for "HINGE" displays Kason part numbers 213 and 214, but also displays and refers to a part offered by Kason's competitor, CHG.

k.   AllPoints No. 26-1572 for "HINGE" displays Kason part number 211, but also refers to a part offered by Kason's competitor, CHG.

l.   AllPoints No. 26-1573 for "HINGE" displays Kason part number 1216, but also refers to a part offered by Kason's competitor, CHG.

m.   AllPoints No. 26-1578 for "op HINGE" uses the "Original Parts" name and shows a product by a competitor, but also displays the Kason part number 215.

n.   AllPoints No. 26-1580 for "op HINGE" uses the "Original Parts" name, but also displays the "KASON" wordmark and part number.

o.   AllPoints No. 26-1585 for "DOOR CLOSER" displays the "KASON" wordmark.

p.  AllPoints No. 26-1586 for "DOOR CLOSER" displays the
    "KASON" wordmark and part number, but also refers to a part
    offered by Kason's competitor, CHG.

q.  AllPoints No. 26-1899 for "HINGE ASSY" displays Kason part
    number 1245, but also refers to a part offered by Kason's
    competitor, CHG.

r.  AllPoints No. 26-1900 for "HINGE ASSY" displays Kason part
    number 1245, but also refers to a part offered by Kason's
    competitor, CHG.

s.  AllPoints No. 26-1901 for "HINGE ASSY" displays Kason part
    number 1245, but also refers to a part offered by Kason's
    competitor, CHG.

t.  AllPoints No. 26-1902 for "HINGE ASSY" displays Kason part
    number 1245, but also refers to a part offered by Kason's
    competitor, CHG.

u.  AllPoints No. 26-1904 for "op HINGE" uses the "Original
    Parts" name, but purports to show a Kason 1256 hinge, the
    appearance of which is protected by U.S. Trademark Reg. No.
    2,136,434, and also displays the "KASON" wordmark.

v. AllPoints No. 26-1905 for "HINGE" purports to show a Kason 1255 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,177,708, and also displays the "KASON" wordmark.

w. AllPoints No. 26-1907 for "HINGE" purports to show a Kason 1245 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,176,043, also displays the "KASON" wordmark and states that a Kason part number "'1245' is casted on strap & flange."

x. AllPoints No. 26-1908 for "HINGE" purports to show a Kason 1245 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,176,043, also displays the "KASON" wordmark and states that a Kason part number "'1245' is casted on strap & flange."

y. AllPoints No. 26-1909 for "HINGE" purports to show a Kason 1245 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,176,043, also displays the "KASON" wordmark and states that a Kason part number "'1245' is cast on strap & flange."

z.  AllPoints No. 26-1910 for "HINGE" purports to show a Kason 1248 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,415,070, also states that Kason part numbers 1245 and 1248 are "cast on strap" and "cast on flange" and displays the "KASON" wordmark.

aa. AllPoints No. 26-1911 for "HINGE" purports to show a Kason 1248 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,415,070, also states that Kason part numbers 1245 and 1248 are "cast on strap" and "cast on flange" and displays the "KASON" wordmark.

bb. AllPoints No. 26-1912 for "HINGE" purports to show a Kason 1248, also states that Kason part numbers 1245 and 1248 are "casted on strap" and "casted on flange" and displays the "KASON" wordmark.

cc. AllPoints No. 26-2997 for "DOOR CLOSER" purports to show a Kason 1094 door closer, the appearance of which is protected by U.S. Trademark Reg. No. 3,212,100, and also displays the "KASON" wordmark.

dd.AllPoints No. 26-3003 for "op HINGE" uses the "Original Parts" name, but also displays the "KASON" wordmark.

ee. AllPoints No. 26-3238 for "HINGE, DOOR" purports to show a Kason 212 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,374,415, and displays the "KASON" wordmark.

ff. AllPoints No. 26-3244 for "op HINGE - CONCEALED" uses the "Original Parts" name, but also displays the "KASON" wordmark.

gg.AllPoints No. 26-3297 for "CARTRIDGE ASSEMBLY" displays the "KASON" wordmark and part number.

hh.AllPoints No. 26-3358 for "HINGE, CAM-LIFT OFFSET" purports to show a Kason 1248 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,415,070, and also displays the "KASON" wordmark.

ii. AllPoints No. 26-3360 for "HINGE, CAM-LIFT" purports to show a Kason 1245, the appearance of which is protected by U.S. Trademark Reg. No. 2,176,043, and also displays the "KASON" wordmark.

jj.  AllPoints No. 26-3381 for "op HINGE, DOOR - EDGEMNT" uses the "Original Parts" name but purports to show a Kason 218 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,437,925, and displays the "KASON" wordmark.

kk. AllPoints No. 26-3382 for "HINGE, DOOR - EDGEMOUNT" purports to show a Kason 218 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,437,925, and displays the "KASON" wordmark.

ll.  AllPoints No. 26-3390 for "HINGE, DOOR - EDGEMOUNT" purports to show a Kason 217 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,437,925, and displays the "KASON" wordmark.

mm.     AllPoints No. 26-3403 for "HINGE, DOOR - 4 HOLE" purports to show a Kason 1249 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,415,066.

nn. AllPoints No. 26-3973 for "LATCH, MAGNETIC" displays the "KASON" wordmark and part number.

oo. AllPoints No. 26-4047 for "CAM-LIFT HINGE" purports to show a Kason 215 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,349,251.

pp. AllPoints No. 26-4048 for "DOOR-EDGEMOUNT HINGE" purports to show a Kason 217 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,437,925, and displays the "KASON" wordmark.

qq. AllPoints No. 26-4075 for "HINGE" purports to show a Kason 214 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,374,415, and displays the "KASON" wordmark.

rr. AllPoints No. 26-4076 for "HINGE" purports to show a Kason 217 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,437,925, and displays the "KASON" wordmark.

ss. AllPoints No. 26-4079 for "STRIKE" displays the "KASON" wordmark and part number.

tt. AllPoints No. 26-4086 for "DOOR CLOSER" purports to show a Kason 1095 door closer, the appearance of which is protected

by U.S. Trademark No. 4,906,918, and displays the "KASON" wordmark.

uu. AllPoints No. 26-5307 for "DOOR CLOSER BODY w/HOOK" purports to show a Kason 1095 door closer, the appearance of which is protected by U.S. Trademark 4,906,918, and also displays the "KASON" wordmark.

vv. AllPoints No. 26-5324 for "DOOR CLOSER FLUSH" purports to show a Kason 1095 door closer, the appearance of which is protected by U.S. Trademark No. 4,906,918, and displays a Kason part number, but also references a part offered by Kason's competitor, CHG.

ww.     AllPoints No. 26-5699 for "STRIKE FOR FLUSH DOOR" displays the "KASON" wordmark and part number.

xx. AllPoints No. 26-5747 for "PULL HANDLE - BRUSHED" purports to show a Kason 1229 handle, the appearance of which is protected by U.S. Trademark No. 2,166,710, and also displays the "KASON" wordmark.

yy. AllPoints No. 26-6092 for "CARTRIDGE, HINGE - PAIR" displays the "KASON" wordmark.

zz. AllPoints No. 26-6116 for "HINGE" displays the "KASON" wordmark, but also refers to parts offered by Kason's competitors, CHG and Standard Keil.

aaa.    AllPoints No. 26-6140 for "HINGE ASSEMBLY" displays the "KASON" wordmark.

bbb.    AllPoints No. 26-6149 for "HINGE, EDGEMOUNT" displays the "KASON" wordmark and part number.

ccc.    AllPoints No. 26-6175 for "COVER, HINGE (KASON 217)" purports to show a Kason 217 hinge, the appearance of which is protected by U.S. Trademark Reg. No. 2,437,925, and displays the "KASON" wordmark and part number.

ddd.    AllPoints No. 26-6177 for "HINGE (1-1/8" OFST, 6"L)" displays the "KASON" wordmark and part number.

eee.    AllPoints No. 26-6199 for "FOOT" displays the "KASON" wordmark and part number.

fff. AllPoints No. 26-6203 for "HINGE" displays the "KASON" wordmark and part number.

ggg.    AllPoints No. 26-6218 for "FOOT" displays the "KASON" wordmark and part number.

hhh. AllPoints No. 26-6273 for "LATCH" displays the "KASON" wordmark and part number.

iii. AllPoints No. 26-6274 for "LATCH" displays the "KASON" wordmark and part number.

jjj. AllPoints No. 26-6284 for "BRACKET, HINGE" displays the "KASON" wordmark and part number.

kkk. AllPoints No. 26-6285 for "BRACKET, HINGE" displays the "KASON" wordmark and part number.

lll. AllPoints No. 28-1120 for "op FOOT" uses the "Original Parts" name, but also displays the "KASON" wordmark and part number.

mmm. AllPoints No. 28-1137 for "op LEG" uses the "Original Parts" name, but also displays the "KASON" wordmark and part number.

nnn. AllPoints No. 28-1464 for "CURTAIN, STRIP-EASIMNT" displays the "KASON" wordmark and part number.

ooo. AllPoints No. 28-2410 for "CAM KIT" displays the "KASON" wordmark.

ppp.    AllPoints No. 32-1232 for "STRIP CURTAIN" displays

the "KASON" wordmark and part number.

qqq.    AllPoints No. 32-1233 for "STRIP CURTAIN" displays

the "KASON" wordmark and part number.

rrr.AllPoints No. 32-1234 for "STRIP CURTAIN" displays the

"KASON" wordmark and part number.

sss.    AllPoints No. 32-1235 for "STRIP CURTAIN" displays

the "KASON" wordmark and part number.

ttt. AllPoints No. 32-1237 for "STRIP CURTAIN" displays the

"KASON" wordmark and part number.

uuu.    AllPoints No. 32-1858 for "STRIP CURTAIN-

EASIMNT" displays the "KASON" wordmark and part

number.

vvv.    AllPoints No. 120-1031 for "CASTER,STEM" displays

the "KASON" wordmark and part number, but also refers to

Kason's competitor, CHG.

www.    AllPoints No. 120-1084 for "CASTER,PLATE (5",

GRY)" displays the "KASON" wordmark and part number, but

also refers to Kason's competitor, CHG.

xxx.     AllPoints No. 120-1150 for "CASTER,PLATE (6",
GRY)" displays the "KASON" wordmark and part number, but
also refers to Kason's competitor, CHG.

yyy.     AllPoints No. 122-1029 for "LATCH (W/STRIKE/LK)"
displays the "KASON" wordmark and part number.

zzz.     AllPoints No. 122-1221 for "LATCH (W/STRIKE)"
purports to show a Kason 533 latch, the appearance of which is
protected by U.S. Trademark Reg. No. 2,590,113, and displays
the "KASON" wordmark.

aaaa.    AllPoints No. 122-1032 for "LATCH" displays the
"KASON" wordmark and part number.

bbbb.    AllPoints No. 123-1040 for "COVER, HINGE (KASON
212)" purports to show a Kason 212 hinge, the appearance of
which is protected by U.S. Trademark Reg. No. 2,374,415, and
displays the "KASON" wordmark.

cccc.    AllPoints No. 123-1041 for "HINGE, EDGEMOUNT"
purports to show a Kason 212 hinge, the appearance of which is
protected by U.S. Trademark Reg. No. 2,374,415, and displays
the "KASON" wordmark.

dddd.    AllPoints No. 123-1050 for "HINGE, EDGEMOUNT"

purports to show a Kason 214 hinge, the appearance of which is

protected by U.S. Trademark Reg. No. 2,374,415, and displays

the "KASON" wordmark.

eeee.    AllPoints No. 123-1100 for "HINGE, STRAP" displays

the "KASON" wordmark and part number.

ffff.    AllPoints No. 124-1216 for "STRIP,REPLACEMENT"

displays the "KASON" wordmark and part number.

gggg.    AllPoints No. 124-1218 for "CURTAIN,STRIP" displays

the "KASON" wordmark and part number.

hhhh.    AllPoints No. 124-1221 for "CURTAIN,STRIP" displays

the "KASON" wordmark and part number.

iiii.    AllPoints No. 124-1223 for "CURTAIN,STRIP" displays

the "KASON" wordmark and part number.

jjjj.    AllPoints No. 124-1322 for "CLOSER,DOOR" displays

the "KASON" wordmark and part number.

kkkk.    AllPoints No. 124-1327 for "CLOSER,DOOR" displays

the "KASON" wordmark and part number.

llll. AllPoints No. 129-1245 for "FILTER,BAFFLE" displays the "KASON" wordmark and part number.

mmmm. AllPoints No. 129-1248 for "FILTER,BAFFLE" displays the "KASON" wordmark and part number.

nnnn. AllPoints No. 129-1249 for "FILTER,BAFFLE" displays the "KASON" wordmark and part number.

oooo. AllPoints No. 129-1251 for "FILTER,BAFFLE" displays the "KASON" wordmark and part number.

pppp. AllPoints No. 148-1060 for "CASTER,STEM" displays the "KASON" wordmark and part number.

qqqq. AllPoints No. 148-1062 for "CASTER,STEM" displays the "KASON" wordmark and part number.

rrrr. AllPoints No. 148-1063 for "CASTER,STEM" displays the "KASON" wordmark and part number.

ssss. AllPoints No. 253-1304 for "FIXTURE,CFL" displays the "KASON" wordmark and part number.

tttt. AllPoints No. 288-1065 for "LATCH,DOOR (OLD STYLE)" displays the "KASON" wordmark and part number.

uuuu.    AllPoints 800-3117 for "THERMOTAINER KASON

HINGE" purports to show a Kason 214 hinge, the appearance

of which is protected by U.S. Trademark Reg. No. 2,374,415,

and displays the "KASON" wordmark.

vvvv.    AllPoints No. 800-4910 for "HINGE/FLHMT LONG

STRAP" purports to show a Kason 1248 hinge, the appearance

of which is protected by U.S. Trademark Reg. No. 2,415,070.

wwww.   AllPoints No. 800-9293 for "HINGE KIT" purports to

offer a pair of Kason 215 hinges (by referring to AllPoints No.

26-4047, included above), the appearance of each hinge is

protected by U.S. Trademark Reg. No. 2,349,251.

xxxx.    AllPoints No. 36200 for "op BRACKET FOLDING"

uses the "Original Parts" name, but also displays the "KASON"

wordmark and part number.

109.   The aforementioned advertisements are attached hereto as Exhibit 28.

110.   AllPoints causes consumer confusion by advertising parts that

AllPoints identifies with (1) its own brand name; (2) a generic name; (3) and/or its

own part number, then including with the advertisement Kason's name, Kason's

registered trade dress, and/or Kason's part numbers and also using the names of

other manufacturers in those same advertisements, including the names of Kason's competitors, CHG and Standard Keil.  These practices are designed to confuse purchasers as to the true source of the part.  As a result of the aforementioned portrayals, and other similar portrayals on the AllPoints website, AllPoints obfuscates whether a part is a genuine Kason part, an unauthorized copy of a Kason part, or a part from another source, such as "Original Parts" or some other parts supplier such as CHG.

111.   AllPoints' parts catalogs includes many of the same confusing and deceptive tactics detailed above.  An excerpted copy of the AllPoints "Cold Side" catalog is attached hereto as Exhibit 29 (available at www.allpointsfps.com/download/AllPoints-Refrigeration.pdf).  An excerpted copy of the AllPoints "Hot Side" catalog is attached hereto as Exhibit 30 (available at http://www.allpointsfps.com/download/AllPoints-Cooking.pdf).

112.   Kason and AllPoints are both competitors in the commercial restaurant equipment replacement parts industry.

113.   For each of the parts detailed above, Kason offers a genuine Kason part to the purchasing public.  Kason has lost sales as a result of AllPoints' false, confusing, and misleading sales tactics.

**D. DSI Parts' Unlawful Conduct**

114.   Through its online website, DSI Parts offers and sells restaurant equipment replacement parts.  DSI Parts sells genuine Kason parts through its website.

115.   However, upon further investigation, DSI Parts also confusingly markets products that may or may not be genuine Kason products.  For example, as shown below, DSI Parts markets product number 300-0056 as a "Kason K-56" latch:



(Exhibit 31).

116.   But the photograph depicted above and on the DSI Parts website is a photograph of a similar product made by Kason's competitor, Component Hardware Group.  As a result, DSI Parts causes consumer confusion by referring to

"Kason," but showing the product of Kason's competitor.  Therefore, DSI Parts is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

117.   DSI Parts unlawfully, unfairly, and deceptively utilizes Kason's trademarked name to confuse the consuming public about the source of at least the above-mentioned product on the DSI Parts website.

118.   Kason and DSI Parts are both direct and indirect competitors in the commercial restaurant equipment replacement parts industry.

### E. FDW Parts' Unlawful Conduct

119.   On information and belief, FDW Parts imported into the United States the infringing Han-Ca latches and sold them to KKT.  Further on information and belief, FDW Parts sold at least 500 of the Han-Ca latches to KKT (Exhibit 32), and possibly as many as 9,000 or more of that product to KKT and others.

120.   The Han-Ca latch marketed and sold by FDW Parts infringes at least the following Kason Marks:

| Kason Marks | FDW Part's Infringing Product |
|---|---|
|  (The '919 Mark) | |



(The '452 Mark)

121.   FDW Parts has been marketing and selling, and continues to market and sell, the infringing Han-Ca latch without Kason's permission or authorization, in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

122.   On information and belief, FDW Parts sells the infringing Han-Ca latch at a price believed to be lower than Kason's price.

123.   On information and belief, FDW Parts has been copying and continues to copy and sell other Kason products, in addition to the Kason 0544 latch, to customers, in violation of 15 U.S.C. §§ 1114(1)(a), (b) and/or 1125(a). Further on information and belief, FDW Parts markets and sells products that infringe some or all of the Kason Marks, in violation of 15 U.S.C. §§ 1114(1)(a), (b) and/or 1125(a).

124.   Kason and FDW Parts are both direct and indirect competitors in the commercial restaurant equipment replacement parts industry.

### F. **FMP's Unlawful Conduct**

125.   Through its online website, FMP offers and sells restaurant equipment replacement parts.  FMP sells genuine Kason products through its website.

126.   However, upon further inspection by Kason, FMP also offers and sells products confusingly similar to genuine Kason products, such as the generically labeled "Latch (w/ Cylinder Lock)," shown below:



(Exhibit 33).

127.   FMP does not identify the manufacturer of that product, but, on information and belief, the above photograph is of a Kason Product No. 56 latch.

128.   Since at least as early as 1963, Kason's product number 056 latch has been promoted and sold extensively throughout the United States by Kason. Consumers have long recognized the appearance of that latch and its sister latch,

the Kason product number 058 latch, as trademarked products produced

exclusively by or for Kason.  Those Kason products are protected by the '603

Mark and the '009 Mark.

129.    That depiction of the Kason trademarked product, without

identifying whether or not it is a genuine Kason product, creates confusion in the

marketplace, because the consumer cannot determine whether or not FMP offers a

genuine Kason product.

130.   Further confusing the consumer, FMP also provides "Part Reference

Info" for this "Latch" product that lists various Kason product numbers and also

product numbers of Kason's competitor, CHG:



(*Id.*)

131.   FMP unlawfully and unfairly utilizes a photograph of Kason's trademarked product and Kason's trademarked name to confuse the consuming public about the true source of this "Latch" product.

132.   As a result, FMP further unlawfully infringes the "Kason" word marks, the '632 and '763 Marks, as well as the '603 and '009 Marks, by confusingly referring to Kason and CHG in the "Part Reference Info" on its website.

133.   Furthermore, FMP depicts additional products on its website in a similar, confusing manner.  Therefore, FMP is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a)

**G. Tundra's Unlawful Conduct**

134.   Through its website, Tundra markets and sells restaurant equipment replacement parts, including refrigeration parts.  Some of the parts offered and sold by Tundra are genuine Kason parts.

135.   But, upon further inspection by Kason, Tundra confusingly and misleadingly markets and sells parts which might or might not be genuine Kason parts, as detailed below.

136.   For example, Tundra sells the "Original Parts - 264047 – Kason 215 Cam Lift Offset Door Hinge," shown below:



(Exhibit 34).

137.   Although the name of the product, which states "Kason," seems to indicate it is a Kason product, the product is not a genuine Kason product.

138.   Instead, that product sold by Tundra is an unauthorized copy of the

Kason 0215 hinge, evidenced by the fact that the back of the Tundra product lacks

the "Kason" trademarks shown on the back of the genuine Kason product:

| Kason's Genuine 0215 Hinge (back view) | "Tundra Original Parts – 264047 – Kason 215 Cam Lift Offset Door Hinge" (back view) |
|---|---|
|  | |
| (Exhibit 17) (red circles added) | (Exhibit 35) |

139.   The appearance of the Kason product is protected by the '251 Mark. As a result, Tundra's marketing and selling of an unauthorized copy of the Kason product infringes Kason's '251 Mark:

| Kason's '251 Mark | "Tundra Original Parts – 264047 – Kason 215 Cam Lift Offset Door Hinge" |
|---|---|
|  | (Exhibit 36) |

140.   Therefore, Tundra is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

141.   By way of another example, Tundra also markets the following latch, identified as the "Lockwood – HAN-CA" latch, on its website:



(Exhibit 37).

142.   On information and belief, that latch is the same latch that KKT

marketed and sold, as detailed in Section V, *supra*.  The Lockwood Han-Ca latch

infringes at least Kason's '919 and '452 Marks.  Therefore, Tundra is in violation

of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

143.   For example, on information and belief, Tundra sells an unauthorized

copy of Kason's 215 hinge, the appearance of which is protected by U.S.

Trademark Registration No. 2,349,251:



(Exhibit 38).

144.   By way of another example, Tundra is also "reverse passing off" parts that appear to be genuine Kason parts by advertising and selling parts using the name "Original Parts."  Tundra is using the "Original Parts" name as a confusing marketing tool to misrepresent, as its own or as Diversified's, what appear to be Kason's parts.  Tundra advertises parts under the "Original Parts" brand, but displays a Kason part and links to a Kason manual:



(Exhibit 39) (red circles added).

145.   The part pictured above is Kason's 174 latch, which Tundra has

confusingly labeled "ORIGINAL PARTS - 221456 - DOOR LATCH" in an

attempt to denote – falsely – the origin of the displayed part, which is *Kason's* 174

latch.  Further, Tundra links to a Kason manual for the product, causing confusion

as to whether the product is a genuine Kason product.  That advertising by Tundra

is an attempt to confuse and mislead the consuming public about the origin of the

part.  And if an unauthorized copy of Kason's latch is delivered, Tundra would be

liable for trademark counterfeiting as well.

146.   By way of another example, through its website, Tundra sells the "Original Parts - 221119 - Latch," as shown below:



ORIGINAL PARTS - 221119 - LATCH

SKU: 221119

List Price: $214.00/EA
Actual Price: $140.40/EA - You save 34%!

Shipping Info: Stock item, same day shipping M-F  ?

(Exhibit 40).

147.   Tundra creates confusion in the marketplace by using an image of Kason's latch and marketing the product as "Original Parts," but not accurately identifying that product as a genuine Kason product.

148.   By way of another example, the following door closer, having Kason product number 1095 in the title, is shown as an "Original Parts" product:



(Exhibit 41) (red circle added).  Noticeably absent in the above textual description is any indication that the part is a Kason product.  However, the photograph seems to indicate that it is a Kason product (see red circle) being offered, but not in a way that a purchaser would notice as identifying the source of the advertised item.  As a result of this portrayal, and other similar portrayals on the Tundra website, Tundra obfuscates whether a product is actually a Kason product, or an "Original Parts" product.

149.   Tundra also confusingly advertises parts using a generic name and its own part number, but then refers to the "KASON" wordmark, registered Kason trade dress, and/or a Kason part number in the part description.  This practice has been considered trademark infringement and/or unfair competition for decades. *See, e.g., Syntex (U.S.A.), Inc. v. Interpharm, Inc.*, No. 1:92-cv-03, 1993 WL 643372, at *6 (N.D. Ga. Mar. 19, 1993) (Ward, J.) ("plaintiffs are substantially

likely to prevail on their claim that defendants' current usage of plaintiffs' trademarks in their advertisements constitutes trademark infringement and common law unfair competition, as defendants' advertising is not only false, it is confusing as to the source of the part the customer is ordering . . . and defendants fail to inform customers that the parts they are ordering are not the prominent brand name parts, but the generic versions").

150.   Kason part numbers are significant in the mind of the consumer to connect the part offered with Kason as the source of the part.  The reason Tundra uses Kason's part numbers in its advertising is to represent, sometimes falsely, that a part is supplied by Kason.

151.   Kason has spent hundreds of thousands of dollars advertising its parts and using the part numbers in those advertisements, such as through part catalogs that are distributed to customers throughout the United States, and in responses to requests for quotation.  Additionally, Kason's part numbers, including the ones referred to by Tundra in its advertisements, have been in use for many years, sometimes decades.  Indeed, the only reason Tundra references Kason's part numbers in its advertisements is to indicate a connection, whether or not such connection is false, with Kason.

152.   Additionally, Tundra confusingly markets parts by stating that a part "replaces" a Kason part or is "equivalent to" a Kason part.  Advertising that a non-Kason part "replaces" a Kason part or is "equivalent to" a Kason part" is false and also creates a likelihood of confusion, prohibited by the Lanham Act. *Anton/Bauer, Inc. v. Energex Sys. Corp.*, 839 F. Supp. 243, 245 (S.D.N.Y. 1993) ("misleading statements concerning part similarity or compatibility are prohibited by both trademark law and numerous antideception provisions including § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)").  That representation is misleading because it is unclear whether "replaces" or "equivalent to" means that the part is actually a genuine Kason part or a part by another manufacturer.  That representation also is false because it implies that a non-Kason "replacement" or "equivalent to" part adheres to the same manufacturing and quality control standards as genuine Kason parts

153.   Specific examples of parts that Tundra advertises on its website using the aforementioned misleading and confusing tactics are:

    a.   Tundra No. 21105 for "CHG – R26-1000 – R26 MECHANICAL LATCH & STRIKE" displays the "KASON" wordmark and part number, but also refers to a part offered by Kason's competitor, CHG.

b.  Tundra No. 21109 for "CHG - R25-2700-XNC - R25

MAGNETIC LATCH & STRIKE W/ HEAT RESISTANT

HANDLE" displays the "KASON" wordmark and part number,

but also displays the part and name of Kason's competitor,

CHG.

c.  Tundra No. 21112 for "ORIGINAL PARTS - 221456 - DOOR

LATCH" uses the "ORIGINAL PARTS" name, but also

displays the "KASON" wordmark by including a "manual" to

the Kason 174 latch.

d.  Tundra No. 21117 for "ORIGINAL PARTS - 221094 -

MAGNETIC LATCH & STRIKE" uses the "ORIGINAL

PARTS" name, but also displays the "KASON" wordmark by

including a "manual" for the Kason 172 latch.

e.  Tundra No. 21125 for "CHG - R25-1700-NC - R25

MAGNETIC LATCH & STRIKE" displays the "KASON"

wordmark and part number, but also refers to a Kason

competitor, CHG.

f.  Tundra No. 21126 for "CHG - R25-1700-C - R25 MAGNETIC

LATCH & STRIKE W/ LOCK" purports to show a Kason 171

latch, the appearance of which is protected by U.S. Trademark Reg. No. 2,319,965, and displays the "KASON" wordmark, but also refers to a Kason competitor, CHG.

g.  Tundra No. 21130 for "KASON – 11094000003 – 1094 DOOR CLOSER BODY" purports to show a Kason 1094 door closer, the appearance of which is protected by U.S. Trademark Reg. No. 3,212,100, and displays the "KASON" wordmark and part number.

h.  Tundra No. 21251 for "COMMERCIAL – 930C OFFSET LATCH & STRIKE" displays the "KASON" wordmark and part number, but also refers to Kason's competitors, CHG and Standard Keil.

i.  Tundra No. 21308 for "CHG – W95-1010 – HEAVY DUTY FLUSH MECHANICAL DOOR CLOSER" purports to show a Kason 1095 door closer, the appearance of which is protected by U.S. Trademark Reg. No. 4,906,918, and displays the "KASON" wordmark and part number, but also refers to Kason's competitor, CHG.

j.   Tundra No. 21309 for "CHG – W95-1020 – HEAVY DUTY

OFFSET MECHANICAL DOOR CLOSER" purports to show

a Kason 1095 door closer, the appearance of which is protected

by U.S. Trademark Reg. No. 4,906,918, and displays the

"KASON" wordmark and part number, but also refers to a

Kason competitor, CHG.

k.   Tundra No. 21350 for "ALLPOINTS SELECT - 21351 -

CARTRIDGE HINGE ASSEMBLY" displays the "KASON"

wordmark and part number and links to a Kason "manual," but

also refers to Kason's competitor, CHG.

l.   Tundra No. 21405 for "ORIGINAL PARTS – 261580 -

HINGE" uses the "ORIGINAL PARTS" name and displays the

"KASON" wordmark and part number by linking to a Kason

"manual."

m.  Tundra No. 21407 for "ORIGINAL PARTS - 263310 -

SPRING ASSISTED HINGE" displays a Kason part number,

1267.

n.  Tundra No. 21421 for "KASON 11070000040 – 1070 1-1/8 IN
    OFFSET HINGE" does not show a Kason part, but displays the
    "KASON" wordmark and part number.

o.  Tundra No. 21456 for "ORIGINAL PARTS - 261904 -
    REVERSIBLE HINGE" uses the "ORIGINAL PARTS" name
    and purports to show a Kason 1256 hinge, the appearance of
    which is protected by U.S. Trademark No. 2,136,434, and
    displays the "KASON" wordmark and part number.

p.  Tundra No. 21460 for "CHG – R50-2850 – R50-2850
    EDGEMOUNT HINGE" displays a Kason part number, 1267.

q.  Tundra No. 21479 for "CHG-R42-2842 - # 1216 5 IN OFFSET
    EDGEMOUNT HINGE" displays the "KASON" wordmark
    and part number, but also refers to Kason's competitors, CHG
    and Standard Keil.

r.  Tundra No. 263381 for "ORIGINAL PARTS – 263381 –
    DOOR HINGE" uses the "ORIGINAL PARTS" name and
    purports to show a Kason 218 hinge, the appearance of which is
    protected by U.S. Trademark Reg. No. 2,437,925.

s.   Tundra No. 263393 for "ORIGINAL PARTS – 263393 – 1095
     DOOR CLOSER" uses the "ORIGINAL PARTS" name and
     purports to show a Kason 1095 door closer, the appearance of
     which is protected by U.S. Trademark Reg. No. 4,906,918, and
     displays the "KASON" wordmark within the photograph, and
     also displays the Kason part number in the part title.

t.   Tundra No. 264047 for "KASON - 10215000004 - CAM LIFT
     OFFSET DOOR HINGE" purports to show a Kason 215 hinge,
     the appearance of which is protected by U.S. Trademark Reg.
     No. 2,349,251, and displays the "KASON" wordmark, but links
     to an "ORIGINAL PARTS" warranty.

u.   Tundra No. 264458 for "ORIGINAL PARTS – 264458 –
     DOOR LATCH" uses the "ORIGINAL PARTS" name, but
     purports to show a Kason 171 latch, the appearance of which is
     protected by U.S. Trademark Reg. No. 2,319,965, and displays
     the "KASON" wordmark and part number.

v.   Tundra No. 36200 for "ORIGINAL PARTS – 36200 –
     FOLDING SHELF BRACKET" uses the "ORIGINAL

PARTS" name, but also displays the "KASON" wordmark and
part number and also refers to Kason's competitor, CHG.

w. Tundra No. 8001076 for "ORIGINAL PARTS – 8001076
CHROME PAIR OFFSET 1-3/8 HINGE" uses the
"ORIGINAL PARTS" name and purports to show a pair of
Kason 217 hinges, each of which are protected by U.S.
Trademark Reg. No. 2,437,925.

154.   The aforementioned advertisements are attached hereto as Exhibit 42.

155.   By way of another example, Tundra's parts catalog confusingly
depicts Kason's products by (1) using the same photographs to depict its
competitor CHG's products; or (2) not identifying whether a product is a genuine
Kason product.  As a result, Tundra creates confusion in the marketplace as to the
source of certain products, as exemplified below:

## STRAIGHT HANDLE LATCHES AND STRIKES



**CHG Part No. R35**
- Mechanical latch
- 10³/₄" high
- 5¼" hole center



**Kason Part No. 174**
- Mechanical latch
- 10³/₄" high
- 5¼" hole center



| Item No. | Lock |
|----------|------|
| 21100 | No |
| 21101 | Yes |
| 21102 | Strike Only |

| Item No. | Lock |
|----------|------|
| 21112 | No |

## STRAIGHT HANDLE LATCHES AND STRIKES



**CHG Part No. R26**
- Mechanical latch
- 9¹/₄" high
- 4¼" hole center

**Kason Part No. 533**
- Mechanical latch
- 9⁵/₁₆" high
- 5¼" hole center

| Item No. | Lock |
|----------|------|
| 21105 | No |
| No. 21106 | Strike Only |

| Item No. | Lock |
|----------|------|
| 21129 | No |

94

**CHG Part No. R25**
- Magnetic latch
- 11$\frac{1}{2}$" high
- 5$\frac{7}{8}$" hole center

| Item No. | Lock |
|----------|------|
| 21125 | No |
| 21126 | Yes |



**Kason Part No. 0171**
- Magnetic latch
- 11$\frac{1}{2}$" high
- 5$\frac{7}{8}$" hole center

| Item No. | Lock |
|----------|------|
| 21104 | Yes |



**Kason Part No. 0172**
- Magnetic latch
- 10$\frac{17}{32}$" high
- 5$\frac{1}{4}$" hole centers

| Item No. | Lock |
|----------|------|
| 21117 | No |



**CHG Part No. R24**
- Magnetic latch
- 10$\frac{3}{4}$" high
- 5$\frac{7}{8}$" hole centers

| Item No. | Lock |
|----------|------|
| 21123 | No |
| No. 21122 | Strike Only |

Will also replace Part Nos. 2824 and 9175



## WARMER LATCH AND STRIKE
No. 21110



- $\frac{5}{8}$" and 4$\frac{3}{16}$"
- Heat proof handle
- Number on back is 170

| | No. 21181 |
|---|---|
| | Mounting Screw Kit |

(Exhibit 43).

156.   Tundra's parts catalogs includes many of the same confusing and deceptive tactics detailed above.  An excerpted copy of the Tundra catalog is attached hereto as Exhibit 44.

157.   Tundra causes consumer confusion by advertising parts that Tundra identifies with (1) its own brand name; (2) a generic name; and/or (3) its own part number, then including with the advertisement Kason's name, Kason's registered trade dress, and/or Kason's part numbers and also using the names of other manufacturers in those same advertisements, including the names of Kason's competitors, CHG and Standard Keil.  These practices are designed to confuse purchasers as to the true source of the part.  As a result of the aforementioned portrayals, and other similar portrayals on the Tundra website, Tundra obfuscates whether a part is a genuine Kason part, an unauthorized copy of a Kason part, or a

part from another source, such as "Original Parts" or some other parts supplier such as CHG.

158.   Therefore, Tundra is in violation of 15 U.S.C. §§ 1114(1)(a), (b) and 1125(a).

159.   Kason and Tundra are both competitors in the commercial restaurant equipment replacement parts industry.

160.   For each of the parts detailed above, Kason offers a genuine Kason part to the purchasing public.  Kason has lost sales as a result of Tundra's false, confusing, and misleading sales tactics.

## VII.   KASON PROVIDES NOTICE OF REGISTRATION OF ITS MARKS, AND DEFENDANTS HAD ACTUAL NOTICE THAT KASON'S MARKS WERE REGISTERED

161.   Pursuant to 15 U.S.C. § 1111, Defendants have had constructive and actual notice that Kason's word marks (the '632, '763, and '113 Marks) are registered marks.  After many years of purchasing Kason's products, Defendants very likely know that the "Kason" word marks are registered.  This fact is exemplified by Defendants' omission of some – but not all – of those registered marks when copying Kason's 0544 latch and 0215 hinge.  Furthermore, AllPoints' online catalogs include the statement that "ALL OEM NAMES MENTIONED IN THIS CATALOG ARE REGISTERED TRADEMARKS."  Those facts show Defendants are aware that Kason's word marks are registered.

162.   Pursuant to 15 U.S.C. § 1111, Kason has provided notice that its trade dress marks are registered by displaying the "®" in its product catalogs since about 2006.  For example, Defendants produced documents DIVERSIFIED-001186, -88, Diversified-001357, -62, -74, and -80, which are pages from a Kason product catalog that bears a copyright date of 2006 and shows the "®" next to Kason part nos. 0533, 0171, 056, 058, 0215, and 0217, providing notice in accordance with 15 U.S.C. § 1111.  Thus, (1) Defendants had actual notice of Kason's registered trade dress regarding certain products; and (2) Kason has

provided sufficient notice that the appearance of its products are protected by the '113, '965, '603, '009, '251, and '925 Marks.

## VIII.  DEFENDANTS' HARMFUL ACTIONS ADVERSELY AFFECT KASON

163.   Kason and Defendants are direct and indirect competitors in the commercial restaurant equipment industry, at least for the sales of replacement restaurant equipment parts.

164.   As a result of the foregoing, Defendants have been marketing, advertising, and/or selling, and continue to market, advertise, and/or sell, parts not supplied by Kason in ways that infringe some or all of Kason's trademark rights, including the Kason Marks.

165.   The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that copies of Kason parts offered for sale and sold by Defendants are genuine parts of Kason.

166.   Kason and Defendants market to and try to influence the same group of customers to purchase their wares.  But Defendants do so by displaying Kason's trademarks and infringing Kason's intellectual property rights.  Defendants are offering the infringing parts at lower prices, and on information and belief, the infringing parts are of different, and in many cases, lesser quality and have not

99

undergone the testing to ensure the high standards of durability that Kason requires of parts bearing the famous Kason name and other marks, which symbolize Kason's reputation and goodwill.  By infringing Kason's intellectual property rights, Defendants unlawfully and without authorization from Kason seek to gain the benefit of Kason's reputation for strict quality standards that Kason's customers have come to recognize through Kason's trademarks.

167.   Defendants' infringing parts also are deficient and inferior to Kason's parts because, on information and belief, those parts are not NSF (National Sanitation Foundation) certified.  This lack of certification causes harm because Kason's parts are NSF certified, and when a customer believes that a part was produced by Kason, they expect the part to be NSF certified.  NSF certification requires compliance with strict standards and procedures, undergoing extensive part testing and material analysis to comply with food safety protocols.  The Kason parts at issue herein are NSF certified.  (*See* http://info.nsf.org/Certified/Food/Listings.asp?Company=25800&Standard=002.)

168.   Each sale by Defendants of the infringing parts is a lost sale for Kason, causing a loss in market share, revenue, and the business opportunities reflected by these measures.

169.    Kason's goodwill also is at risk if Defendants do not stop infringing the Kason Marks.  By copying Kason's parts and/or offering those parts as competitive parts, Defendants are trading off of Kason's reputation and goodwill as a leading innovator in the field of restaurant equipment components symbolized by Kason's Marks.  As a result, Defendants gain a competitive advantage in influencing purchasers of restaurant equipment bearing Kason's Marks and also unfairly gain a potential foothold in the market with customers, which irreparably harms Kason as the single source of origin for the trademarked Kason parts.

170.    Defendants' infringement further harms Kason because Defendants will unfairly gain entry into the market for restaurant equipment parts bearing the Kason Marks, including selling related replacement parts in the future, as well as the aftermarket for repairs, all as a result of Defendants' infringing activity.

171.    Kason's OEM customers purchase and incorporate Kason's parts into the parts they manufacture, including commercial restaurant equipment.  After the passage of time, the customers will often need replacement parts and aftermarket repairs.  As would be expected, those customers turn to Kason.

172.    Once a customer has made investments of time, energy, and resources into choosing certain hardware and parts from one manufacturer, and has confirmed that the finished part meets all applicable codes and desires, the

customer is reluctant to change manufacturers and/or parts and, as a consequence, it becomes very difficult for another manufacturer to sell competing hardware to the customer.  Additionally, once a piece of hardware is installed and in use, the hardware manufacturer gains the intangible benefit of beginning to build a stronger relationship with the end users who become familiar with the hardware through actual day-to-day use.

173.   For these reasons, Kason commonly invests a substantial amount of time, energy, and resources into developing, patenting, certifying, registering, marketing, and selling new parts, with the reasonable expectation that there will be a substantial return on its investments as the new parts emerge in the marketplace, and as replacement parts and repairs are needed.  As a result, once Defendants misuse, for example, the appearance of the non-Kason Latch to convince a customer to order parts from Defendants instead of Kason, Kason is immediately and irreparably harmed.

174.   Kason invested substantially in developing, patenting, trademarking, creating, achieving NSF certification, improving, and marketing its parts.  By doing so, Kason created a demand for the parts represented by the Kason Marks among customers and others in this market.  Kason reasonably expected the trajectory of its development, marketing, and sales efforts and investments to result

in sales to many different customers and at prices commensurate with its market position for these parts, and with gaining positive goodwill and reputation for its parts and features, and with additional business opportunities flowing therefrom because Kason had an early foothold in the emerging market for its branded parts.

175.   Additionally, Defendants, by infringing the Kason Marks and continuing to infringe the Kason Marks, have unfairly gained a foothold in the market Kason has created.  Defendants have displaced Kason from the full foothold Kason should have had among customers in the market by reason of Kason's market-leading service, reliability, development, patenting, trademarking, marketing, and sales efforts.

176.   As a result of Defendants' actions, Kason has or will suffer price erosion, loss of goodwill, damage to reputation, future damages from lost sales of replacement parts and equipment repair, and loss of other business opportunities. As a result, Kason has been and will continue to be irreparably harmed by Defendants' actions.

## COUNT I
### (Trademark Counterfeiting and Infringement – 15 U.S.C. § 1114)

177.   Kason restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

178.   The Kason Marks and the goodwill of the business associated with them in the United States and throughout the world are of great and incalculable value, are highly distinctive, and have become universally associated in the minds of the purchasers of foodservice equipment hardware with Kason's parts and related services of the very highest quality and reputation.

179.   Defendants have manufactured, imported into the United States, distributed, offered for sale, advertised, and/or marketed parts to the consuming public using a counterfeit mark and/or in direct competition with Kason's provision of goods under the Kason Marks, in or affecting interstate commerce.

180.   Defendants acted without Kason's authorization or consent, and with knowledge of Kason's well-known and prior rights in the registered Kason Marks. Despite that knowledge, Defendants' parts are intentionally confusingly similar to and/or substantially indistinguishable from, the Kason Marks and, in some cases, bear Kason's name and/or part number.

181.   By their sales and use of copies or confusingly similar versions of the Kason Marks in conjunction with selling and advertising Defendants' goods,

104

Defendants are likely to cause, and are causing, confusion, mistake, and deception among the general purchasing public as to the origin of Defendants' goods, and are likely to deceive the public into believing the goods being promoted and sold by Defendants bearing the Kason Marks originate from, are associated with, or are otherwise authorized by Kason, all to the damage and detriment of Kason's reputation, goodwill, and sales.

182.   Defendants' use of the Kason Marks also is likely to cause, and is causing, confusion, mistake, and deception among the restaurant equipment selling community and purchasing public, many of whom are small business owners, as to the origin of related goods bearing the Kason Marks, and is likely to deceive that public into believing that Defendants' parts are related goods that originate from, are associated with, or are otherwise authorized by Kason, all to the damage and detriment of Kason's reputation, goodwill and sales.

183.   Kason has been and will continue to be harmed by Defendants' wrongful conduct.

184.   In light of Kason's significant and longstanding investment in building its parts' reputation for quality, the goodwill created by that investment, and the customer relationships undermined by Defendants' aforesaid acts, Defendants have irreparably harmed Kason in ways not readily compensated by

monetary damages, and will continue to irreparably harm Kason in this manner

unless enjoined by the Court, as a result of which Kason is without adequate

remedy at law.

185.   As the direct and proximate result of Defendants' deliberate and

intentional infringement, Defendants have been unjustly enriched while Kason

continues to suffer injury in an amount not yet ascertained, including future

damages from lost sales of replacement parts and equipment repair services.

186.   Kason is entitled to treble damages, attorneys' fees, and/or statutory

damages for Defendants' use of counterfeit marks pursuant to 15 U.S.C. §§

1117(a), (b), and (c).

187.   For Kason to recover such damages, Defendants "need not know that

the marks [being used] are federally registered trademarks." *Chanel, Inc. v. Bryan*,

No. 07-cv-225, 2008 WL 11336327, at * 6 (N.D. Ga. Nov. 18, 2008) (Evans, J.).

188.   Kason also is entitled to injunctive relief, as detailed in 15 U.S.C. §

1116, including seizure of goods bearing counterfeit marks under § 1116(d).

## COUNT II
## (Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a))

189.   Kason restates and incorporates the averments set forth in the above paragraphs as though fully set forth herein.

190.   The goods bearing the Kason Marks sold and offered for sale by Defendants are of the same nature and type as the goods and services sold and offered for sale by Kason and, as such, Defendants' use is likely to cause confusion to the general purchasing public, and to the restaurant equipment purchasing public.  By misappropriating and using the Kason Marks, Defendants misrepresent and falsely describe to the general public and to the purchasing community the origin and source of the goods bearing the Kason Marks and create a likelihood of confusion by consumers and by the purchasers of parts as to the source of such goods and services.

191.   Furthermore, when Defendants offer or advertise parts supplied by Kason's competitors, Defendants often use Kason part numbers.  Those offers or advertisements are likely to cause confusion to the general purchasing public, and to the restaurant equipment purchasing public.  Defendants also misrepresent and falsely describe to the general public and to the purchasing community the origin and source of goods not supplied by Kason that bear the Kason part numbers,

thereby creating a likelihood of confusion by consumers and by the purchasers of parts as to the source of such goods and services.

192.   Defendants' actions constitute a false designation of origin, sponsorship, approval, or certification, and a false description or representation of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

193.   Because of Kason's open and widespread use of the Kason Marks and part numbers in the promotion of Kason's business which competes with Defendants' businesses, and in light of Kason's business relationship with at least Diversified, AllPoints, and Tundra for sales of genuine parts bearing the Kason Marks and part numbers, Defendants' use of the Kason Marks and part numbers is with knowledge and in willful disregard of Kason's rights therein.

194.   Kason has been and will continue to be harmed by Defendants' wrongful conduct.

195.   As the direct and proximate result of Defendants' deliberate and intentional infringement, Defendants have been unjustly enriched while Kason continues to suffer injury in an amount not yet ascertained.

196.   In light of Kason's significant and longstanding investment in building its parts' reputation for quality, the goodwill created by that investment, and the customer relationships undermined by Defendants' aforesaid acts,

Defendants have irreparably harmed Kason in ways not readily compensated by monetary damages, and will continue to irreparably harm Kason in this manner unless enjoined by the Court, as a result of which Kason is without adequate remedy at law.

## COUNT III
## (Common Law Trademark Infringement)

197.   Kason restates and incorporates the averments set forth in the above paragraphs as if fully set forth herein.

198.   As a result of Kason's hard work and investments in producing, providing, and promoting its parts associated with the Kason Marks and part numbers, all of which occurred long before Defendants began marketing and selling the parts that infringe, Kason has built up valuable goodwill in the Kason Marks and part numbers.  As such, the Kason Marks and part numbers have become associated with Kason's parts and services, and have come to symbolize the reputation for quality and excellence of the Kason parts and services.

199.   Defendants' unauthorized use of the Kason Marks and part numbers is being made with Defendants' knowledge of Kason's well-known and prior rights in the Kason Marks and part numbers.

200.   Defendants' unauthorized use of the Kason Marks and part numbers is likely to cause confusion or to deceive the consuming public and the purchasers of restaurant equipment, and constitutes trademark infringement under the common law of the State of Georgia, and the laws of the United States.

201.   Defendants' acts constitute willful infringement of Kason's exclusive rights in the Kason Marks and part numbers, in violation of state common law.

202.   Kason has been and will continue to be harmed by Defendants'

wrongful conduct.

203.   In light of Kason's significant and longstanding investment in

building its parts' reputation for quality, the goodwill created by that investment,

and the customer relationships undermined by Defendants' aforesaid acts,

Defendants have irreparably harmed Kason in ways not readily compensated by

monetary damages, and will continue to irreparably harm Kason in this manner

unless enjoined by the Court, as a result of which Kason is without adequate

remedy at law.

204.   As the direct and proximate result of Defendants' deliberate and

intentional infringement, Kason continues to suffer injury in an amount not yet

ascertained.

## COUNT IV
## (Georgia Unfair Competition and Deceptive Trade Practices
## O.C.G.A. § 10-1-372)

205.   Kason restates and incorporates the averments set forth in the above paragraphs as though fully set forth herein.

206.   As a result of Kason's hard work and investments in producing, providing, and promoting its parts associated with the Kason Marks and part numbers, Kason has built up valuable goodwill in the Kason Marks and part numbers.  As such, the Kason Marks and part numbers have become associated with Kason's parts and services, and have come to symbolize the reputation for quality and excellence of the Kason parts and services.

207.   Defendants, with full knowledge of the Kason Marks and part numbers and of Kason's prior use of same, intended to and did trade on the goodwill associated with the Kason Marks and part numbers.

208.   Defendants' acts have misled and continue to mislead and deceive the public as to the source of the goods and services offered by Defendants, permit and accomplish passing off of the goods offered by Defendants as those of Kason, and falsely suggest a connection with Kason.

209.   Therefore, Defendants have committed unfair competition and engaged in deceptive trade practices in violation of Georgia law O.C.G.A. § 10-1-372.

210.   Kason has been and will continue to be harmed by Defendants' wrongful conduct.

211.   In light of Kason's significant and longstanding investment in building its parts' reputation for quality, the goodwill created by that investment, and the customer relationships undermined by Defendants' aforesaid acts, Defendants have irreparably harmed Kason in ways not readily compensated by monetary damages, and will continue to irreparably harm Kason in this manner unless enjoined by the Court, as a result of which Kason is without adequate remedy at law.

212.   As the direct and proximate result of Defendants' deliberate and intentional infringement, Defendants have been unjustly enriched while Kason continues to suffer injury in an amount not yet ascertained.

## **JURY DEMAND**

213.   Plaintiff demands a trial by jury on all disputed issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a judgment in its favor and demands the following relief:

1.   A preliminary injunction and a permanent injunction enjoining Defendants, their successors or assigns, and their officers, directors, partners, agents, subcontractors, servants, employees, attorneys, affiliates, licensees, divisions, subsidiaries and related entities, and all others acting in concert or participation with Defendants, from doing any of the following:

    a.   Displaying, marketing, or using any unauthorized copy of the Kason Marks or part numbers, or any such similar mark, to advertise, promote the sale of, or to identify any part or service offered by Defendants;

    b.   Making, in any manner whatsoever, any statement or representation, or performing any act likely to deceive members of the public about the origin of genuine or non-genuine Kason parts marketed and sold by Defendants;

2.     A decree ordering an accounting by Defendants to establish all profits realized as a result of the wrongful acts by Defendants set forth in this Third Amended Complaint, and any other wrongful acts by Defendants to be set forth at trial;

3.     Judgment finding that Defendants have willfully infringed Kason's protectable trademarks;

4.     Judgment against Defendants specifically including, but not limited to the following, to the extent allowed by law (including, but not limited to, 15 U.S.C. §§ 1114, 1116(d), 1117, and 1125; trademark common law; and O.C.G.A. § 10-1-372):

> a.  actual monetary damages sustained by Plaintiff, or, in the alternative, statutory damages where such are authorized, including but not limited to $2,000,000 per counterfeit mark per type of good sold, offered for sale, or distributed for the willful counterfeiting by Defendants;
>
> b.  seizure of all counterfeit marks, including the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation;

c.  profits unlawfully earned by Defendants as a result of the

unlawful acts;

d.  exemplary, punitive, and treble damages where such are

authorized by law;

e.  costs and prejudgment interest;

f.  attorneys' fees; and

5.   Such other and further relief as the Court deems appropriate and just

under the circumstances.

Dated: April 11, 2018

Respectfully submitted,

EVERSHEDS SUTHERLAND (US) LLP

*/s/ Ann G. Fort*

Ann G. Fort
GA Bar No. 269995
Daniel J. Warren
GA Bar No. 738240
Robert R.L. Kohse
GA Bar No. 863748
Walter S. Freitag
GA Bar No. 510393
999 Peachtree St. NE, Suite 2300
Atlanta, GA 30309
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
annfort@eversheds-sutherland.com
danwarren@eversheds-sutherland.com
robkohse@eversheds-sutherland.com
walterfreitag@eversheds-sutherland.com

*Attorneys for Kason Industries, Inc.*

## **VERIFICATION**

Pursuant to 18 U.S.C. § 1746, I declare under penalty of perjury that the statements of fact in the foregoing Verified Third Amended Complaint are true and correct.

This 11th day of April, 2018.

*/s/ Alexander S. Katz*
Alexander S. Katz
President
Kason Industries, Inc.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 11, 2018, a true and correct copy of the foregoing was filed via ECF which caused a copy to be served on counsel of record for Defendants:

> David S. Kerr
> Mark D. Changaris
> Berg Hill Greenleaf Ruscitti LLP
> 1712 Pearl Street
> Boulder, CO 80302
> dsk@bhgrlaw.com
> mdc@ bhgrlaw.com
>
> Lawrence K. Nodine
> Chittam Udayan Thakore
> Ballard Spahr LLP
> 999 Peachtree Street, NE, Suite 1000
> Atlanta, GA 30309
> nodinel@ballardspahr.com
> thakorec@ballardspahr.com

> */s/ Ann G. Fort*
> Ann G. Fort

119